**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jesus A. BESERRA, Defendant–Appellant.**

No. 91–3619.

United States Court of Appeals,
Seventh Circuit.

Argued June 17, 1992.

Decided July 21, 1992.

Barry R. Elden, Matthew M. Schneider, Asst. U.S. Attys., John J. Tharp, Jr. (argued), Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Michael B. Mann, Zavislak & Mann, Hillside, Ill. (argued), for defendant-appellant.

Before CUMMINGS, POSNER, and MANION, Circuit Judges.

POSNER, Circuit Judge.

The defendant was sentenced to 78 months in prison after he pleaded guilty to one count of conspiring to possess cocaine with intent to distribute it. 21 U.S.C. § 846. The only question raised by his appeal is whether the district judge committed clear error in refusing to reduce the offense level by two points for acceptance of responsibility, which would have lowered the guidelines range applicable to the defendant from 78–97 months to 63–78 months.

Acceptance of responsibility means that "the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). This demonstration can be evidenced by such things as voluntary termination of criminal conduct, voluntary and truthful admission of guilt, voluntary surrender promptly after commission of the offense, voluntary payment of restitution prior to an adjudication of guilt, and voluntary assistance to the authorities, but the list is not exhaustive. Application Note 1. A plea of guilty is (normally) a necessary, but is not a sufficient, condition. U.S.S.G. § 3E1.1(c); Application Note 2.

The defendant's claim is based on a letter he wrote the probation officer who conducted the presentence investigation (and who recommended against a finding of acceptance of responsibility), and on a brief oral statement to the district judge, which essentially repeats the letter and in which the defendant says: "I made a terrible thing and involved myself and paid attention to the person that was the informant, and in those days I was drinking a lot and that is what drove me to do this, to pay attention to this person. And because of that I feel that I really beg your forgiveness." The judge regarded this as an effort to shift responsibility from the defendant himself to the demon alcohol and evil companions. A judge who took the same approach in *United States v. Drapeau*, 943 F.2d 27 (8th Cir.1991), was affirmed—as was a judge who took the opposite approach in *United States v. Big Crow*, 898 F.2d 1326 (8th Cir.1990).

The matter can indeed be argued both ways. It is a fact that people who drink heavily and have the misfortune to fall in with bad people are more likely to commit crimes, and an acknowledgement and understanding of the role of these circumstances could be thought the first step toward self-reform. One way to avoid temptation is to have character; another is to keep away from the circumstances that create temptation. That is one way to look at Bessera's statement but another is that he was trying to avoid responsibility by blaming his criminal conduct on forces outside of his own will or character. Just as Hamlet apologized to Laertes by saying that it was not Hamlet who had wronged him but Hamlet's madness, so Bessera apologized to the court by saying that it was not Bessera but drink that had committed the wrong for which he was to be punished.

Determinists will wonder how a criminal act could be the product of pure will, uninfluenced by outside circumstances, and believers in free will may wonder why a defendant who acknowledges having committed a crime because he chose freely to do so—being, at the time anyway, an evil person—should get a shorter sentence than a weak person who acknowledges having committed his crime out of weakness. At argument the government's able lawyer expressed disdain for defendants who "make excuses," but the defendant who has and

makes no excuses—who takes full responsibility for his crime—confesses to being unable to point to anything that might mitigate his criminality.

We see no easy solution to this conundrum, and can find no illuminating discussion in the case law, which discusses the nature and purpose of the acceptance-of-responsibility provision in only the most general terms. See, e.g., *United States v. Gonzalez,* 897 F.2d 1018, 1021 (9th Cir. 1990). But we think the Application Note is on the right track in emphasizing deeds over words—external, verifiable, expiatory acts over self-serving, unverifiable reports of interior mental states. Not only are deeds better evidence than words ("putting your money where your mouth is"), but they have value to the law-enforcement authorities, compared to which breast-beating before the sentencing judge is a debased currency indeed. It is better to credit a defendant for doing something of value to someone than for retaining a lawyer who can help him craft a spiel that will tread the delicate line between making excuses and confessing a will to evil. Bessera has no expiatory deeds.

The framers of the sentencing guidelines were not, we take it, addressing the metaphysics of human responsibility. No doubt they wanted to encourage the guilty to plead guilty in order to save the government and the judiciary the costs of trial, as well as to reward defendants for concrete acts of assistance or restitution. In addition they may have wanted to lighten the sentence of criminals in whom glimmerings of conscience could be discerned. A person who is conscious of having done wrong, and who feels genuine remorse for his wrong rather than indignation at being a victim of circumstances—of poverty or drink or a brutal upbringing or whatever else may have predisposed him to criminal activity—is on the way to developing those internal checks that would keep many people from committing crimes even if the expected costs of criminal punishment were lower than they are. People similarly situated in regard to such external circumstances as poverty and neighborhood do not all have the identical participation in criminal activity. Some privileged people commit crimes, and many underprivileged do not. Perhaps some day we will learn enough about human behavior to be able to attribute every criminal act to a specific hereditary or environmental factor outside the criminal's control, but meanwhile we use the word "conscience" to distinguish between otherwise similar people who respond differently to the temptation to commit criminal acts. Judicial inquiry into acceptance of responsibility is a search for expiatory deeds and, failing those (for the defendant may have had no opportunity to perform such deeds), for conscience. We cannot say that the district judge in this case clearly erred in finding insufficient evidence of the second—there was as we said no evidence at all of the first—to justify a reduced sentence.

AFFIRMED.