UNITED STATES of America, Appellee,

v.

Fernando F. REYES, Defendant–Appellant.

No. 181, Docket 93–1170.

United States Court of Appeals, Second Circuit.

Argued Sept. 22, 1993.

Decided Nov. 30, 1993.

Edward V. O'Hanlan, New Canaan, CT (O'Rourke & O'Hanlan, of counsel), for defendant-appellant.

James I. Glasser, Asst. U.S. Atty., D. Conn., Bridgeport, CT (Albert S. Dabrowski, U.S. Atty., D. Conn., New Haven, CT), for appellee.

Before VAN GRAAFEILAND, WALKER and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

Defendant-appellant Fernando Reyes appeals from the sentence imposed following his plea of guilty to one count of conspiracy to import cocaine, in violation of 21 U.S.C. § 963 (1988). Reyes organized a dockside diving expedition to the hull of a ship to which a canister of cocaine had been affixed. The expedition was aborted when Reyes learned that the canister had been found and removed by the police upon the ship's arrival in Bridgeport, Connecticut. At his plea allocution and at sentencing, Reyes testified that the sole objective of the dive had been to ascertain whether or not the canister was still in place upon arrival of the ship in Bridgeport harbor, and to so advise his contact in Colombia; Reyes disclaimed any intent to remove the contraband and bring it ashore. The United States District Court for the District of Connecticut (Nevas, *J.*) found that, while Reyes's admitted conduct fulfilled the elements of the offense of conviction, his disclaimer was unbelievable. Accordingly, the district court denied Reyes a downward adjustment in sentence for acceptance of responsibility. On February 26, 1993, the district court imposed a term of imprisonment of 188 months, supervised release for a term of five years, and ordered Reyes to pay a special assessment of $50. On appeal, Reyes contends that the district court erred in denying him a downward adjustment for acceptance of responsibility.

We affirm.

## BACKGROUND

In or about August, 1990, a person identified only as Herman, whom Reyes had met on a trip to Colombia in 1988, telephoned Reyes at his Chicago home and instructed him to fly to Miami. A round trip ticket was forwarded to Reyes, who arrived in Miami on or about September 1, 1990. There he met with a person Reyes identifies only as Pepe, who informed Reyes that the ship *Potomac* would soon be arriving in Bridgeport, Connecticut, carrying a "load".

Reyes traveled to Connecticut with his wife, his brother Rafael, a family friend named Jeff Stein, and his son Francisco, whom the district court described as "a trained and skilled scuba diver." After spending one night at a hotel in Connecticut, the group drove to New York City. There Reyes met with Pepe and a person identified only as Carlos, who gave Reyes $5,000 in cash to purchase scuba diving equipment. On September 17, 1990, the group returned to Connecticut, where they rented a cargo van and awaited the arrival of the *Potomac.*

As it entered the harbor on September 18, 1990, the *Potomac* was immediately examined by the Bridgeport Police Department Dive Team. The Dive Team discovered one canister containing 66 kilograms of cocaine affixed to the ship's stabilizer bar, some ten feet below the water.

Unaware of the police seizure, Reyes and his son went to the harbor the following day in an automobile bearing Illinois license plates. They asked a person whose pier was in close proximity to the *Potomac* if they could use that pier to go scuba diving for lobsters. Later that day, the same person observed Reyes and other members of the group returning to the harbor in a cargo van bearing Connecticut license plates. The group left the harbor soon after learning from passers-by that the police had removed the canister of cocaine from the ship.

The individual who had encountered Reyes on the pier was suspicious of an expedition to scuba dive for lobsters in Bridgeport harbor, and reported the license plate number of the van to agents of the United States Customs Service. The agents confronted Reyes the next day when Reyes returned the rented van to the rental company. With Reyes's permission, the agents searched the car in which Reyes was preparing to leave the car rental office, and discovered scuba diving equipment as well as various tools of the type that had been used by the Bridgeport police to remove the canister from the ship's hull. After some further inquiries, Reyes and the rest of the group were arrested.

On September 28, 1990, Reyes requested a proffer session with the government. During that session, Reyes initially claimed to be working as an undercover agent attempting to infiltrate a Medellin cocaine cartel for the Chicago Police Department. After this ac-

count was checked and discredited, Reyes admitted that he had been instructed to remove the canister. Reyes further admitted that he and his accomplices were to be paid $2,000 per kilogram if successful, or a flat fee of $5,000 for their efforts if not. At a second proffer session on October 18, 1990, Reyes re-characterized his mission and financial arrangements, and soon thereafter ended his cooperation with the government.

On November 15, 1990, Reyes's brother, Rafael, was arrested in Chicago. In his debriefing, Rafael Reyes confirmed that the group had travelled to Bridgeport to remove the canister from the *Potomac,* not simply to "check" the load.

On December 2, 1992, Reyes entered a plea of guilty to a single-count superseding indictment charging him with conspiring to import more than five kilograms of cocaine, in violation of 21 U.S.C. § 963. The written plea agreement required the government to recommend sentence reductions under the United States Sentencing Guidelines for Reyes's minor role in the offense and for his acceptance of responsibility. The acceptance of responsibility recommendation was conditioned upon (1) "the defendant's full and complete disclosure to both the Government and the Probation Office of the circumstances surrounding his commission of the offense" and (2) the "defendant's recognition and affirmative acceptance of personal responsibility for the offense."

At the plea allocution, Reyes testified that the sole objective of the diving expedition was to "look underneath the boat to see if there was a container there." In its proffer, the government stated that Reyes also intended to remove the cocaine from the ship. Without resolving this discrepancy, the court confirmed in an exchange with the government that the facts related by Reyes would, if true, suffice to establish the offense of conspiracy, and the court thereupon accepted the guilty plea.

Since Reyes conspired to import more than 66 kilograms of cocaine into the United States, the presentence report (the "PSR") set the base offense level at 36. *See* U.S.S.G. § 2D1.1(a)(3). The PSR then recommended a two-level upward adjustment for obstruc-

tion of justice. *See* U.S.S.G. § 3C1.1. The PSR recommended no downward adjustments. The recommended adjusted offense level was therefore 38.

On February 16, 1993, after Reyes had an opportunity to review the PSR, he filed a motion to withdraw his guilty plea. The court denied that motion. Also on February 16, Reyes filed objections to the PSR, including an objection to the PSR's failure to recommend a downward adjustment for acceptance of responsibility.

Reyes and his son appeared before Judge Nevas for sentencing on February 26, 1993. Reyes testified at the sentencing hearing that he was instructed to travel "to Connecticut to take a look at a canister under the ship." He emphatically denied that he intended to remove the canister. Defense counsel ascribed Reyes's previous contrary admission to the lack of an interpreter at the proffer session and, in support of this theory, submitted a linguist's affidavit opining that Reyes lacks the English language skills to "understand legal concepts, or complicated scenarios."

At the end of the sentencing hearing, the district court rejected the PSR recommendation to increase Reyes's base offense level for obstruction of justice, and decided to award a two-level reduction for his minor role in the offense. However, the court denied Reyes (and his son) the two-level reduction for acceptance of responsibility:

> With respect to acceptance of responsibility, the Court denies that reduction because they both deny that they were to take the cocaine off the ship, and the Court finds that denial and that version of their role unbelievable. I do not believe that their role was solely to determine that the canister was still affixed to the hull of the ship, and therefore, I cannot find that they have accepted responsibility.

Applying the two-level reduction for minor role to the base offense level of 36 brought the offense level to 34, which, given Reyes's criminal history category of I, yielded a sentencing range of 151–188 months. The district judge imposed a sentence of 188 months

imprisonment, five years supervised release, and a special assessment of $50.

## DISCUSSION

Reyes emphasizes that he gave the same account of his conduct at the sentencing hearing that he gave at the plea allocution. Since the district court accepted his plea, Reyes argues that the district court's denial of a downward adjustment for acceptance of responsibility, on the ground that Reyes's account of the crime was "unbelievable", constitutes an improper interpretation of the Sentencing Guidelines and a violation of his Fifth Amendment right against compelled self-incrimination.

Under the Guidelines, a defendant qualifies for a downward adjustment of two levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense". U.S.S.G. § 3E1.1(a). The Application Notes to this section provide:

1. In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:

(a) *truthfully admitting the conduct comprising the offense(s) of conviction....* Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;

\*    \*    \*    \*    \*    \*

3. Entry of a plea of guilty prior to the commencement of trial *combined with truthfully admitting the conduct comprising the offense of conviction* will constitute significant evidence of acceptance of responsibility.... *A defendant who enters a guilty plea is not entitled to an adjust-*

*ment under this section as a matter of right.*

U.S.S.G. § 3E1.1 Application Notes 1(a), 3 (emphasis added). "A guilty plea does not, by itself, entitle a defendant to a reduced sentence under § 3E1.1." *United States v. Irabor,* 894 F.2d 554, 557 (2d Cir.1990) (addressing Application Note 3). The defendant must truthfully admit the conduct comprising the offense of conviction. U.S.S.G. § 3E1.1 Application Notes 1(a), 3.

Reyes claims that he is entitled to a sentence reduction for acceptance of responsibility because the conduct he admitted—arranging to confirm that the canister of cocaine was still affixed to the *Potomac*—was both legally and factually sufficient to establish the offense of conviction. Reyes's position implies that the judge cannot look beyond or behind the acts disclosed by the defendant at the plea allocution. We disagree. It is true that a sentencing court may not compel testimony in respect of any offense *other* than the offense that is the subject of the plea; Application Note 1(a), quoted above, was added on November 1, 1992, to address a division of opinion among the circuits on this very issue. *Compare United States v. Oliveras,* 905 F.2d 623, 626–28 (2d Cir.1990) (reduction for acceptance of responsibility cannot be conditioned on a defendant admitting to conduct beyond the offense of conviction) and *United States v. Perez–Franco,* 873 F.2d 455, 461–64 (1st Cir.1989) (same) *with United States v. Frazier,* 971 F.2d 1076, 1080–87 (4th Cir.1992) (defendant must accept responsibility for all relevant criminal conduct, including counts that were dismissed), *cert. denied,* —— U.S. ——, 113 S.Ct. 1028, 122 L.Ed.2d 173 (1993) and *United States v. Mourning,* 914 F.2d 699, 705–07 (5th Cir.1990) (same). *See also United States v. Hicks,* 978 F.2d 722, 726 (D.C.Cir. 1992) (the November 1, 1992 amendment to § 3E1.1 "seems to resolve the confusion" by requiring that a defendant accept responsibility only for the offense of conviction). However, as to the offense that *is* the subject of the plea, the district court may require a candid and full unraveling, and need not accept lies or equivocation.

Reyes's argument under the Fifth Amendment rests entirely upon the following language from our decision in *United States v. Oliveras*, 905 F.2d at 631: "[t]o require, as a condition of earning the § 3E1.1 credit that a defendant accept responsibility for behavior which he has continued to deny and has not been proved against him beyond a reasonable doubt raises distinct Fifth Amendment issues. . . ." In *Oliveras*, the district court denied the defendant a reduction for acceptance of responsibility "because he refused to make self-incriminating statements relating to conduct included in counts to which he had not pled guilty and which were dismissed as part of a plea agreement." *Id.* at 632. We remanded for resentencing, finding that the denial of a reduction under § 3E1.1 of the Guidelines cannot be based on a defendant's refusal to accept responsibility for conduct that does *not* comprise the offense of conviction. Here, however, the district court did not call upon Reyes to admit conduct outside the scope of the count to which he pleaded guilty. To gauge the defendant's acceptance of responsibility, the court properly and reasonably solicited a candid explanation of the conduct comprising the offense of conviction. *See United States v. Taylor*, 937 F.2d 676, 681 (D.C.Cir.1991); *see also United States v. Ramirez*, 910 F.2d 1069, 1071 (2d Cir.), *cert. denied*, 498 U.S. 990, 111 S.Ct. 531, 112 L.Ed.2d 542 (1990).

■■■ The district court may deny a reduction under § 3E1.1 of the Guidelines based on a credibility determination that the defendant has not accepted responsibility for the offense of conviction. *United States v. Moskowitz*, 883 F.2d 1142, 1154–55 (2d Cir. 1989) (§ 3E1.1 credit denied based on sentencing judge's skepticism regarding defendant's narrowly tailored acceptance of responsibility). Thus, in *Ramirez*, 910 F.2d at 1071, we affirmed the district court's refusal to find an acceptance of responsibility where the defendant insisted that the drugs he sold were worth no more than $120. Although a $120 drug deal sufficed to establish the essential elements of the offense to which he pleaded guilty, the court found the defendant's account "incredible" because ledgers of drug transactions were discovered in his home, along with $100,000 in cash. *Id.* The

rule in *Oliveras* that supports the result in *Ramirez*, and that governs here, is that a reduction under § 3E1.1 requires a defendant to accept "full responsibility for conduct included in those counts to which he has pled guilty." *United States v. Oliveras*, 905 F.2d at 629.

■■■ In determining whether the defendant has accepted responsibility for the full scope of the offense, the district court has discretion to weigh a defendant's candor and remorse. *See United States v. Cousineau*, 929 F.2d 64, 69 (2d Cir.1991) (denial of § 3E1.1 reduction proper where district court determined defendant "had not shown remorse or acknowledged the wrongfulness of the conduct for which he was convicted."); *United States v. Tillem*, 906 F.2d 814, 828 (2d Cir.1990) (reduction for acceptance of responsibility denied where defendant "showed no contrition at sentencing"). A district court may therefore explore a defendant's recitation of criminal conduct and acknowledgement of remorse, and require "a credible and complete explanation, evincing remorse or contrition, for the conduct surrounding the . . . offense of conviction." *United States v. Taylor*, 937 F.2d at 681.

■■■ Whether or not a defendant has accepted responsibility for the offense of conviction is a factual question as to which the district court's determination should not be disturbed "unless it is 'without foundation.'" *United States v. Irabor*, 894 F.2d at 557 (quoting *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989)); *see also United States v. Boothe*, 994 F.2d 63, 70 (2d Cir. 1993). The Application Notes to § 3E1.1 recognize that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility", so that "the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1 Application Note 5. "With the defendant before him, the sentencing judge is unquestionably in a better position to assess contrition and candor than is an appellate court." *United States v. Taylor*, 937 F.2d at 680; *see also United States v. Lincoln*, 956 F.2d 1465, 1475 (8th Cir.) ("district court is uniquely able to gauge the sincerity and

quality of a defendant's attitude toward his offense"), *cert. denied,* — U.S. —, 113 S.Ct. 259, 121 L.Ed.2d 190 (1992); *United States v. Jones,* 997 F.2d 1475, 1478 (D.C.Cir. 1993) (noting the lack of a " 'Remorse-o-meter' to gauge the defendant's level of sincerity").

■ In most respects, Reyes's account of his role in the conspiracy was constrained by the physical evidence. Few issues offered a test of candor. In stating that the dive was intended to find the contraband, Reyes admitted only that which could not be denied under the circumstances. A district court may, of course, conclude that such a description is consistent with acceptance of responsibility. On the other hand, a district court may conclude that such a description indicates a lack of sincere remorse, and is inconsistent with acceptance of responsibility, where the evidence suggests "a much deeper involvement". *United States v. Ramos,* 923 F.2d 1346, 1360 (9th Cir.1991); *see also United States v. Skinner,* 986 F.2d 1091, 1100 (7th Cir.1993) (defendant not entitled to reduction for acceptance of responsibility where "he was consistently less than candid with the district court concerning the extent of his role in the conspiracy and distribution scheme"); *United States v. Reyes,* 927 F.2d 48, 51 (1st Cir.1991) (where prosecution contended that a smuggler was the ship's captain, smuggler's claim to be co-pilot "reflect[ed] a continuous desire to minimize his responsibility for the crime").

Although Reyes accepted responsibility for conduct that satisfies the bare essentials of the offense of conviction, his explanation of his conduct was, in the eyes of the district judge, "unbelievable":

Now, Mr. Reyes, if I understand your testimony, what you're suggesting to the court is that you and your son came from Chicago to New York, you met with some people in New York, you obtained money, you went out, you either bought or rented diving suits, scuba equipment, rented vans, drove to Connecticut, stayed overnight in hotels, and the whole purpose of this whole episode was simply so you could check to see whether a canister was on the bottom of a ship?

That rhetorical question recites facts sufficient to provoke incredulity. Additional factors confirm that Reyes's account of the offense of conviction was indeed deeply suspect. First, Reyes told the government in his initial proffer session that he had been hired to remove the cocaine from the ship. While this admission may be attributable, as Reyes claims, to his incomplete command of English, the court that hears the defendant's testimony is best situated to make that determination. Second, the police discovered tools in Reyes's vehicle that were of the type used to remove the canister of cocaine from the hull of the ship. Third, Reyes's brother, a co-conspirator, told police in his post-arrest debriefing that the conspirators intended to remove the canister from the ship. Fourth, in Reyes's dealings with the police, he repeatedly changed his mind both as to his story and as to his willingness to cooperate. *See United States v. McGuire,* 957 F.2d 310, 317 (7th Cir.1992). Finally, Reyes told the government during his initial proffer session that he hoped to be paid $2,000 per kilogram of cocaine for his role in the conspiracy. If, as Reyes claims, he was hired only to sight the canister and confirm that it was intact, it is difficult to understand why he would be paid for his services by the kilogram, or how he expected to compute his fee. This evidence, coupled with the district court's credibility determinations, provides ample foundation for the district court's finding that Reyes lacked candor in explaining the conduct comprising his offense of conviction.

### CONCLUSION

There is foundation in the record for the view that Reyes failed to accept responsibility for the offense of conviction, and the sentence imposed by the district court is therefore affirmed.