**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Paulette HAMMICK, a/k/a Rosslyn Forrester, a/k/a Carolyn A. James, Defendant–Appellant.**

**No. 94–1147.**

United States Court of Appeals,
Seventh Circuit.

Argued July 6, 1994.

Decided Sept. 22, 1994.

---

Melvin K. Washington, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Milwaukee, WI, for plaintiff-appellee.

Dennis P. Coffey (argued), Coffey, Coffey & Geraghty, Milwaukee, WI, for defendant-appellant.

Before BAUER, COFFEY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Paulette Hammick pleaded guilty to an eight-count superseding indictment charging her with conspiring to use, using, and attempting to use counterfeit credit cards and identification documents to obtain cash from federally insured financial institutions and goods and services from merchants, all in violation of 18 U.S.C. §§ 371, 1029(a)(1), (b)(1), and 2. She was sentenced on January 5, 1994, to a total of thirty-three months of imprisonment and three years of supervised release. On appeal, Hammick contends that the district court erred in denying her request for a two-level reduction in base offense level for acceptance of responsibility because she refused to answer questions concerning how she arrived in Wisconsin, where she obtained the counterfeit credit cards used in the fraudulent transactions, and the source of the funds recovered at the time of her arrest that exceeded the amounts she had obtained in the fraudulent transactions with which she was charged. Hammick argues that the current version of U.S.S.G. § 3E1.1(a), as amended on November 1, 1992, precludes the district court from basing its denial of an acceptance of responsibility reduction on her silence. For the reasons that follow, we affirm Hammick's sentence.

## I. BACKGROUND

On August 10, 1993, Paulette Hammick and Leah Wanese Phillips initiated a series of transactions using counterfeit credit cards and fraudulent identification documents bearing various aliases. Employing a counterfeit credit card and a false California driver's license, Hammick first obtained a car from the Payless Car Rental Company of Milwaukee, Wisconsin, then drove with Phillips to a number of banks in the Milwaukee area to obtain cash advances with the fraudulent cards. Hammick was successful in obtaining

$3,000 from the Port Washington State Bank in Port Washington, Wisconsin, and another $3,000 from the Valley United Bank, also in Port Washington. Phillips obtained a $3,000 cash advance from the Norwest Bank in Cedar Grove, Wisconsin. Two other attempts by Hammick to obtain cash advances at banks in Whitefish Bay, Wisconsin, and Manitowoc, Wisconsin, were unsuccessful. Later that afternoon, Hammick used a counterfeit credit card to purchase two one-way airline tickets from Green Bay, Wisconsin to Los Angeles, California for herself and Phillips, each under an assumed name. During a stop-over at O'Hare International Airport in Chicago, Illinois, Hammick and Phillips were arrested by Chicago police officers. Wisconsin authorities had advised the Chicago police to watch for the pair. As the police officers were preparing to transport the suspects to the airport security office, they discovered $9,000 in cash lying on the pavement beneath the door of the squad car next to where Hammick was standing. The police searched Phillips and uncovered an additional $5,400 in cash. Hammick and Phillips initially denied that the $14,400 belonged to them.

On September 8, 1993, a federal grand jury returned an eight-count superseding indictment charging Hammick and Phillips with conspiring to use, using, and attempting to use counterfeit credit cards and identification documents to obtain cash from banks, and goods and services from merchants, in violation of 18 U.S.C. §§ 371, 1029(a)(1), (b)(1), and 2. In a letter dated October 13, 1993, Hammick's attorney advised Judge Randa that although Hammick had decided not to enter into the plea agreement proposed by the government, she intended to plead guilty to the charges as stated in the superseding indictment.[1] A guilty plea hearing was held on October 26, 1993. At the hearing, the government's preliminary statement of facts concerning Hammick's criminal conduct was read into the record, and Hammick pleaded guilty as charged. The district judge accepted her plea and ordered the preparation of a presentence report.

---

**1.** R. at 30.

In two letters to Hammick's probation officer, Lisa M. Cichocki, Hammick's attorney stated that Hammick would not submit an offender's version of the events which had led to her conviction because she had accepted the government's version. Counsel also advised Cichocki that Hammick was invoking her Fifth Amendment right not to respond to questions concerning how she arrived in Wisconsin, where she obtained the fraudulent credit cards and identification documents, and where she obtained the excess funds that were confiscated from her at the time of her arrest but could not be accounted for on the basis of the losses sustained by the known victims of her fraud. Hammick maintained that she was not denying her involvement "in what may be other offenses," but was relying on her right to remain silent concerning uncharged conduct under the Fifth Amendment and the applicable Sentencing Guidelines.[2] Hammick's presentence report nevertheless recommended that she be denied a two-level reduction for acceptance of responsibility because she refused to discuss conduct related to the offense of conviction itself, and had therefore failed to demonstrate that she fully accepted responsibility for her crime.[3]

Hammick's sentencing hearing was held on January 5, 1994. In response to counsel's query concerning whether the court intended to adopt the position of the presentence report and deny Hammick an acceptance of responsibility reduction, the district judge stated:

> The Court received your letter, Mr. Coffey, and your reliance upon the Fifth Amendment and the fact that your client does not have to make remarks under that rubric.... But the Court finds and agrees that there has been no discussion relative to relevant conduct that relates to—as the presentence report points out—the source of the excess three thousand. How she acquired the credit cards related to this case and other matters that the Court deems are relevant conduct. And that would, therefore, impact on the

Court's consideration as to whether or not there's been this acceptance of responsibility. So in short, you're right. The Court agrees with those positions taken by the presentence. I am sorry.

(Sentencing Tr. at 5–6.) Hammick's base offense level accordingly remained at 11, and the court set her criminal history category at VI. She was sentenced to thirty-three months in prison, the top of the applicable guideline range, followed by three years of supervised release. Her timely appeal challenges the district court's denial of a two-level reduction for acceptance of responsibility under § 3E1.1(a), as amended.

## II. ANALYSIS

"[T]he clearly erroneous standard of review for findings of fact in the sentencing context is mandated by Congress." *United States v. Tolson,* 988 F.2d 1494, 1497 (7th Cir.1993) (citation, internal quotations omitted). The district court's application of the Guidelines to the facts is given "due deference." *United States v. Johnson,* 997 F.2d 248, 255 (7th Cir.1993) (citing 18 U.S.C. § 3742(e)). Thus, a sentence will be upheld "if it results from a proper application of the Sentencing Guidelines to facts not found to be clearly erroneous." *Tolson,* 988 F.2d at 1497 (internal quotations omitted); *see also United States v. Sykes,* 7 F.3d 1331, 1335 (7th Cir.1993). Questions of law involving the interpretation of a guideline provision are, by contrast, reviewed *de novo. United States v. Rosalez–Cortez,* 19 F.3d 1210, 1218 (7th Cir.1994). The district court is required to apply the version of U.S.S.G. § 3E1.1 in effect at the time of sentencing. *Id.* (citing 18 U.S.C. § 3553(a)(4)). The defendant bears the burden of proving that he is entitled to a reduction in base offense level for acceptance of responsibility. *United States v. Osmani,* 20 F.3d 266, 269 (7th Cir.1994). "[I]t is only when it can be said with certainty that acceptance of responsibility has been shown that reversal of a district court's deni-

---

**2.** The letters from Hammick's counsel to her probation officer Lisa M. Cichocki, dated November 17, 1993, and December 10, 1993, were made part of the Presentence Investigation Report.

**3.** Presentence Investigation Report at 13–14.

al is warranted." *United States v. Curry,* 977 F.2d 1042, 1059 (7th Cir.1992) (emphasis omitted), *cert. denied,* — U.S. —, 113 S.Ct. 1357, 122 L.Ed.2d 737 (1993).

Under § 3E1.1(a), a district judge may reduce a defendant's base offense by two levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Prior to the November 1, 1992 amendment to the Sentencing Guidelines, a two-level reduction was available only if the defendant demonstrated acceptance of responsibility for his "criminal conduct," which included both the conduct underlying the offense of conviction and uncharged conduct related to that offense. *Ebbole v. United States,* 8 F.3d 530, 537 (7th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1229, 127 L.Ed.2d 573 (1994).[4] The November 1, 1992 amendment to the Sentencing Guidelines substantively changed the factors to be considered in determining whether a defendant has demonstrated an acceptance of responsibility. *Id.* at 537–39. As explained in the Commentary to § 3E1.1, in deciding whether a defendant merits a two-level reduction pursuant to the Guideline, the district judge should consider whether the defendant has:

> truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] or not falsely den[ied] any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a

manner inconsistent with acceptance of responsibility.

U.S.S.G. § 3E1.1, comment. (n. 1(a)) (Nov. 1, 1992).

■ Application Note 1(a) thus provides that although a defendant seeking a two-level reduction pursuant to § 3E1.1(a) must clearly accept responsibility for the conduct comprising his offense of conviction, and may not falsely deny relevant conduct beyond the scope of his offense, the defendant "should not be required to affirmatively come clean on relevant conduct in order to obtain the reduction." *United States v. Cedano–Rojas,* 999 F.2d 1175, 1181–82 (7th Cir.1993) (dicta). Under the current version of § 3E1.1, the defendant may therefore invoke his right to remain silent concerning relevant conduct outside the scope of his offense without compromising his eligibility for a two-level reduction for acceptance of responsibility. *See id.; see also United States v. White,* 993 F.2d 147, 150–51 (7th Cir.1993).

The Seventh Circuit has not considered a case where a defendant questioned about conduct related to her offense of conviction expressly invoked her Fifth Amendment privilege against self-incrimination, then claimed that her silence concerning the related conduct was protected by the amended version of § 3E1.1. In *United States v. Austin,* 17 F.3d 27 (2d Cir.1994), the Second Circuit considered a case in which the defendant, Luke Austin, illegally purchased and resold a total of thirty-six firearms. *Id.* at 29. Austin sold five of the thirty-six firearms to a government agent. He then entered into a plea agreement with the government in which he pleaded guilty to the sale of the five firearms as charged in the indictment and agreed to a stipulation of facts describing the circumstances of the charged offense. *Id.* Although Austin freely admitted that he sold the additional thirty-one guns, in most cases to persons he suspected of dealing in narcotics, he nevertheless refused to provide

---

**4.** In *Ebbole,* the Seventh Circuit joined the majority of the circuit courts in holding that a defendant's Fifth Amendment right to be free from self-incrimination is not violated by requiring him to accept responsibility for related criminal conduct in order to qualify for a two-level reduction pursuant to the earlier version of § 3E1.1. 8 F.3d at 535–37; *see United States v. White,* 993 F.2d 147, 150 (7th Cir.1993); *United States v. Cojab,* 978 F.2d 341, 343–44 (7th Cir. 1992). Hammick was sentenced on January 5, 1994, under the new version of § 3E1.1, which became effective on November 1, 1992.

the government with further information concerning where the guns could be found. *Id.* The district court determined that his refusal to assist the government in recovering the thirty-one guns demonstrated a lack of remorse that was inconsistent with a sincere acceptance of responsibility. It accordingly denied Austin a two-level reduction under § 3E1.1(a). *Id.* at 29–30.

On appeal, Austin argued that, because the stipulation of facts attached to his plea agreement encompassed only the five firearms he sold to the government agent, the district court could not base its denial of an acceptance of responsibility reduction on his refusal to provide information concerning the other thirty-one firearms—conduct that was clearly beyond the scope of the offense of conviction. *Id.* at 30. The Second Circuit agreed, observing that although Austin's sale of the thirty-one firearms is "relevant conduct" within the meaning of U.S.S.G. § 1B1.3, and is thus taken into consideration when calculating Austin's base offense level, his refusal to volunteer information about those sales may not serve as a basis for denying a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. *Id.* at 30–31.[5] It is clear from the court's reasoning that it considered the conduct charged in the indictment, together with the stipulation of facts to which the defendant and the government agreed, as constituting the full scope of the conduct underlying Austin's offense of conviction. *See id.* The Second Circuit thus deemed the additional sales of firearms to be "relevant conduct beyond the offense of conviction" for purposes of § 3E1.1(a), which could not be considered in assessing whether the defendant had demonstrated a genuine acceptance of responsibility. *See id.;* U.S.S.G. § 3E1.1, comment. (n. 1(a)).

The Second Circuit and other courts have, however, drawn a distinction between requiring a defendant to provide information concerning uncharged relevant conduct in order to qualify for an acceptance of responsibility reduction, and requiring the defendant to provide a complete and credible explanation of the conduct involved in the offense of conviction itself. In *United States v. Reyes,* 9 F.3d 275 (2d Cir.1993), the defendant Reyes organized a scuba diving expedition to recover a canister of cocaine that had been attached to the hull of a ship. Although Reyes pleaded guilty to one count of conspiracy to import cocaine, he insisted that the sole objective of the dive was to determine whether the canister was still attached to the ship when it arrived, and to advise his contacts in Colombia what he had discovered. At his guilty plea hearing and at sentencing, Reyes persisted in denying that he had any intention of removing the canister from the ship and bringing it ashore. *Id.* at 277. Although Reyes had thus accepted responsibility for conduct which minimally satisfied the elements of the offense of conviction, the district court found his explanation of his conduct unworthy of credence, and denied Reyes a reduction for acceptance of responsibility. *Id.* at 277, 281. The Court of Appeals affirmed. Significantly, the court observed that although "a sentencing court may not compel testimony in respect of any offense *other* than the offense that is the subject of the plea ... as to the offense that *is* the subject of the plea, the district court may require a candid and full unraveling, and need not accept lies or equivocation." *Id.* at 279 (internal citations omitted).

The District of Columbia Circuit reached a similar conclusion in *United States v. Taylor,* 937 F.2d 676 (D.C.Cir.1991). Although that case involved a Fifth Amendment challenge to the earlier version of § 3E1.1, the court's reasoning is nevertheless instructive. At the time of their arrest, the three defendants in *Taylor* were riding in a pick-up truck, carrying loaded firearms and wearing bullet-proof vests. *Id.* at 678. All were convicted felons, and all pleaded guilty to possessing firearms in violation of 18 U.S.C. § 922(g)(1). When

---

**5.** The court also held that Application Note 1(e), which directs the sentencing court to consider a defendant's "voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense" in determining whether to award a reduction under § 3E1.1, does not allow the court to base its denial of the reduction on the defendant's lack of assistance in recovering "fruits and instrumentalities" of criminal conduct that is beyond the scope of the offense of conviction. 17 F.3d at 31–32.

asked by the probation office to explain why they were carrying the guns and wearing the bullet-proof vests, two of the men stated that they were on their way to test the guns and vests. The third simply said, "it's a jungle out there." *Id.* The district court found their responses to be inherently incredible and concluded that none of the three had demonstrated an acceptance of responsibility under § 3E1.1. *Id.* at 679. The Court of Appeals agreed. In response to the defendants' protests that requiring an explanation of their activities would violate their Fifth Amendment right against self-incrimination, the *Taylor* court first observed that courts have distinguished between conditioning an acceptance of responsibility reduction on a defendant's disclosure of conduct beyond the scope of the offense of conviction and requiring the defendant to accept responsibility for the full scope of conduct related to his offense of conviction. *Id.* at 680 (collecting cases). The court accordingly held that § 3E1.1 required "a truthful and complete explanation of, and a genuine acceptance of responsibility for, all of the circumstances surrounding the defendants' firearm possession offense." *Id.* The court further concluded that the defendants' reliance on the Fifth Amendment was misplaced, because the district judge had not required them to admit to crimes other than those that were the subjects of their guilty pleas, but had only insisted that they give a "credible and complete explanation, evincing remorse or contrition, for the conduct surrounding the ... offense of conviction." *Id.* at 681. Because the defendants had refused to do so, they were not entitled to the reduction. *Id.*

■ The courts' decisions in *Reyes* and *Taylor* also serve to illustrate a fundamental principle underlying the acceptance of responsibility reduction, namely, that in the absence of evidence of sincere remorse or contrition for one's crimes, a guilty plea entered for the apparent purpose of obtaining a lighter sentence does not entitle a defendant to a reduction for acceptance of responsibility. *See United States v. Panadero,* 7 F.3d 691, 694 (7th Cir.1993); *White,* 993 F.2d at 151; *United States v. Franklin,* 902 F.2d 501, 505–06 (7th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990).

Indeed, it is well established that pleading guilty does not entitle a defendant to the reduction as a matter of right. U.S.S.G. § 3E1.1, comment. (n. 3); *see Panadero,* 7 F.3d at 694; *United States v. Beserra,* 967 F.2d 254, 255 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 341 (1992). Rather than relying solely on the defendant's guilty plea to award the reduction, the sentencing judge is required to look beyond formalistic expressions of culpability and to determine whether the defendant has manifested an acceptance of personal responsibility for his offense in a moral sense. *Panadero,* 7 F.3d at 694; *see also Beserra,* 967 F.2d at 256 ("Judicial inquiry into acceptance of responsibility is a search for expiatory deeds and, failing those, ... for conscience."). We do not believe that the amended version of the guideline, which allows a defendant to remain silent concerning relevant conduct that is clearly beyond the scope of his offense of conviction, was intended to curtail the sentencing court's discretion in deciding whether the defendant has in all other respects forthrightly avowed responsibility for his crime.

■ The district court denied Hammick's request for an acceptance of responsibility reduction because she refused to explain how she arrived in Wisconsin and where she acquired the fraudulent credit cards and identification documents she used to commit her crimes. Hammick also refused to reveal the source of the excess funds that she and her coconspirator Phillips held at the time of their arrest, which exceeded the amounts involved in their August 10, 1993 transactions by several thousand dollars. Hammick's silence with respect to the excess funds is protected from scrutiny by Application Note 1(a). The funds were not obtained in any transaction with which Hammick and Phillips were charged—and bore no obvious relation to the offense of conviction—apart from the fact that they were seized at the time of Hammick's arrest. Whatever Hammick did to obtain the funds is therefore beyond the scope of the offense of conviction, and Hammick may remain silent concerning the source of the funds without affecting her eligibility for an acceptance of responsibility

reduction. *See Austin,* 17 F.3d at 30–31; U.S.S.G. § 3E1.1, comment. (n. 1(a)).

■ There is, however, an important distinction between Hammick's silence concerning the source of the excess cash confiscated from her and Phillips at the time of their arrest and her silence concerning their means of travel to Wisconsin and the source of the counterfeit credit cards and other documents she used to commit the offenses to which she pleaded guilty. The district judge's request that Hammick explain how she was able to carry out her crimes required no more than "a candid and full unraveling" of the conduct comprising her offense of conviction, *see Reyes,* 9 F.3d at 279; *Taylor,* 937 F.2d at 680–81, and thus did not violate her right to remain silent concerning relevant conduct *beyond* the offense of conviction under the current version of the guideline. U.S.S.G. § 3E1.1, comment. (n. 1(a)); *see United States v. Meacham,* 27 F.3d 214, 217 (6th Cir.1994) (holding that defendant who refused, on the advice of counsel, to discuss his role in narcotics conspiracy with his probation officer failed to demonstrate acceptance of responsibility). The district judge was therefore entitled to adopt the view that Hammick's refusal to provide a complete explanation of how she committed her offenses demonstrated a lack of genuine remorse on her part, warranting denial of an acceptance of responsibility reduction. Because Hammick has failed to carry her burden of demonstrating that the district court erred in denying her a two-level reduction in base offense level under the current version of U.S.S.G. § 3E1.1, her sentence is AFFIRMED.

BAUER, Circuit Judge, dissenting.

I agree with the majority opinion insofar as it states that Hammick may remain silent concerning the source of the funds in her possession without affecting her eligibility for an acceptance of responsibility reduction. But I believe the same, or nearly the same, rationale applies to her refusal to discuss the means of travel to Wisconsin and the source of credit cards and other documents. I believe the reasoning of *United States v. Austin* as cited in the majority opinion, is equally applicable to the facts of this case.

It is true that the issue is not as clearly defined as that involving the source of funds. At first blush, the district judge's request that she explain how she was able to carry out her crimes appears to require no more than a "candid and full unraveling" with respect to the offense of conviction." *See Reyes,* 9 F.3d at 279; *Taylor,* 937 F.2d at 680–81.[1] Moreover, Hammick's invocation of her Fifth Amendment right not to incriminate herself rings somewhat hollow, particularly in light of her reliance on *United States v. McKinney,* 15 F.3d 849 (9th Cir.1994), in arguing that she should not be required to divulge information that "might assist the authorities in incriminating others," rather than herself. (Appellant's Br. at 10.) On balance, however, I believe that the new version of § 3E1.1 allows Hammick to maintain her silence concerning these aspects of her conduct without compromising her ability to receive a two-level reduction for acceptance of responsibility. As the Second Circuit observed in *Austin,* Application Note 1(a) is categorical in allowing a defendant to remain silent with respect to relevant conduct outside the scope of the offense of conviction, whether or not the defendant's silence would also be protected by the Fifth Amendment. 17 F.3d at 31–32; *see also United States v. Johns,* 27 F.3d 31, 34 (2d Cir.1994) (Sentencing Guidelines may provide broader protection than the Constitution). Also, as pointed out by the Second and Ninth Circuits, the focus of § 3E1.1 is on whether the defendant has truthfully admitted the full extent of the conduct which comprises the offense of conviction, not whether she has assisted the authorities in prosecuting

1. *But cf. Austin,* 17 F.3d at 30–31 (conduct charged in the indictment, together with the stipulation of facts agreed to by defendant and the government, constitutes the full scope of the conduct comprising the offense of conviction which the defendant must truthfully admit in order to demonstrate acceptance of responsibility).

others involved in the crime. *See Austin*, 17 F.3d at 31–32; *McKinney*, 15 F.3d at 854.[2]

Moreover, cases such as *Taylor* and *Reyes*, which hold that the defendant must give a full and candid explanation of the conduct underlying the offense of conviction in order to be eligible for a § 3E1.1 reduction, are distinguishable from the present case in a crucial respect: in both *Taylor* and *Reyes*, the defendants lied about their conduct, giving an implausible account of their crimes. *See Reyes*, 9 F.3d at 281; *Taylor*, 937 F.2d at 679–80. Lying does, of course, generally preclude a reduction for acceptance of responsibility. *See Rosalez–Cortez*, 19 F.3d at 1219 (defendant denied the extent of his role in cocaine conspiracy); *United States v. Corbin*, 998 F.2d 1377, 1391, 1394 (7th Cir.1993) (defendant made false exculpatory statements regarding his offense), *cert. denied*, —— U.S. ——, 114 S.Ct. 1124, 127 L.Ed.2d 432 (1994); *White*, 993 F.2d at 150–51 (defendant vigorously denied the government's statement of relevant conduct).[3] By contrast, Hammick has admitted all the facts and circumstances alleged by the government concerning her offense of conviction, and has consistently maintained her right to remain silent as to how she arrived in Wisconsin and how she acquired the fraudulent credit cards. And, like the defendant in *Austin*, Hammick is not "indisputably safe from prosecution" for the conduct which the government has asked her to reveal. *See Austin*, 17 F.3d at 32. Most importantly, the district judge's remarks at sentencing imply that he considered these aspects of Hammick's criminal conduct to be "relevant conduct," rather than conduct within the scope of the charges to which she pleaded guilty. (Sentencing Tr. at 5–6.) Under the new version of § 3E1.1, her refusal to divulge "relevant conduct beyond the offense of con-

viction" may not be taken into consideration in determining her eligibility for an acceptance of responsibility reduction.

Because the district court based its denial of a § 3E1.1 reduction on Hammick's refusal to answer questions concerning relevant uncharged conduct beyond the offense to which she pleaded guilty, I believe that her sentence should be vacated, and that her case remanded for resentencing.

---

**2.** As these courts observe, the defendant's assistance in incriminating others is relevant only to his eligibility for a downward departure for substantial assistance under § 5K1.1, and should not be taken into consideration when determining whether he has accepted full responsibility for his own conduct. *See Austin*, 17 F.3d at 31–32; *McKinney*, 15 F.3d at 854. ·

**3.** *See also United States v. Anderson*, 15 F.3d 979, 931 (10th Cir.) (Defendant falsely denied relevant

conduct), *cert. denied*, —— U.S. ——, 114 S.Ct. 1623, 128 L.Ed.2d 348 (1994); *United States v. Frierson*, 945 F.2d 650, 62–64 (3d Cir.1991) (defendant voluntarily made false statements concerning relevant conduct), *cert. denied*, —— U.S. ——, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992).