UNITED STATES of America,
Plaintiff–Appellee,

v.

Ernest J. SZARWARK, Defendant–
Appellant.

Nos. 98–1968, 98–2189.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 4, 1998.

Decided Feb. 18, 1999.

Donald J. Schmid (argued), Office of the United States Attorney, South Bend, IN, for Plaintiff–Appellee in No. 98–1968.

Andrew B. Baker, Jr., Office of the United States Attorney, Dyer, IN, for Plaintiff–Appellant in No. 98–2189.

C. Kenneth Wilber (argued), Berger, James, Gammage & Wilber, South Bend, IN, for Defendant–Appellant.

Before POSNER, Chief Judge, and BAUER and EVANS, Circuit Judges.

BAUER, Circuit Judge.

After being convicted of mail fraud, in violation of 18 U.S.C. § 1341, Ernest Szarwark ("Szarwark") was sentenced to twenty-four months in prison, and ordered to pay $87,346.29 in restitution. Szarwark appeals, challenging the sufficiency of the government's evidence that the mailings were in furtherance of his scheme to defraud, as well as its evidence that the mailings actually occurred. The government cross-appeals, arguing that it was clear error for the district judge to grant Szarwark a two level reduction for acceptance of responsibility, and that the judge erred in holding that retroactive application of the Mandatory Victim Restitution Act violates the Ex Post Facto Clause. We affirm in part and reverse in part.

## I. BACKGROUND

Ernest Szarwark stole money from the law firm Barnes & Thornburg, where he was a partner. He accomplished this crime by sending legitimate bills to clients but depositing their checks into the firm's trust account rather than its general account. Szarwark then used trust account checks to pay personal debts while representing that he was

making payments on behalf of clients. Finally, Szarwark covered up his activities by writing off the original bills as uncollectible.

On July 10, 1997, a federal grand jury sitting in the Northern District of Indiana charged Szarwark with four counts of mail fraud under 18 U.S.C. § 1341. Szarwark pled not guilty. After a three-day trial, which began on January 6, 1998, a jury convicted him on all four counts. Szarwark made motions for a judgment of acquittal both after the government rested its case and after the jury returned its verdict. His motions were denied. After receiving a two level reduction for acceptance of responsibility under the Sentencing Guidelines, Szarwark was sentenced to twenty-four months in prison. He was also ordered to pay $87,-346.29 in restitution. Both Szarwark and the government appeal.

## II. DISCUSSION

### A. Sufficiency of the Evidence

 Szarwark's appeal challenges the denials of his motion for a judgment of acquittal. Such motions may be granted only "if the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). As we have often explained, when we review for sufficiency of evidence, the appellant "faces a nearly insurmountable hurdle ... [in that] we consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir.1997) (internal quotation marks and citations omitted).

 In order to prove that Szarwark violated the mail fraud statute, 18 U.S.C. § 1341, the government was required to show that he used the mails in furtherance of his scheme to defraud. *United States v. Lack*, 129 F.3d 403, 406 (7th Cir.1997). However, "the use of the mails need not be an essential element of the scheme." *Schmuck v. United States*, 489 U.S. 705, 710, 109 S.Ct. 1443, 1448, 103 L.Ed.2d 734 (1989). Rather,

"[i]t is sufficient for the mailing to be incident to an essential part of the scheme." *Id.* at 710–11, 109 S.Ct. at 1448 (internal quotation marks and citations omitted). Finally, "courts must consider the full scope of the scheme when determining the sufficiency of the mailing element." *United States v. Ashman*, 979 F.2d 469, 482 (7th Cir.1992). *See also Schmuck*, 489 U.S. at 715, 109 S.Ct. at 1450 ("The relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time."). Thus, we read the "in furtherance" requirement broadly. *United States v. Laurenzana*, 113 F.3d 689, 694 (7th Cir.1997).

Szarwark argues that his fraud reached fruition when he deposited his clients' checks into the firm's trust account, bringing the money within his control. He contends that the mailing of the checks constituted mere investment of the proceeds of the scheme and, therefore, was neither an essential part of the scheme nor incident to an essential part of the scheme. Under this theory, Szarwark would have us treat his case as if he had deposited his clients' checks into his own bank account. However, unlike someone who has successfully deposited fraudulently obtained checks into his own bank account, Szarwark could not have benefitted from his scheme without forwarding the checks (which he chose to do by mail) to his creditors. There was no other way for him to get the money out of Barnes & Thornburg's trust account. Obviously, he could not have made the checks out to himself. Thus, there was ample evidence from which the jury could conclude beyond a reasonable doubt that Szarwark's mailing of the checks was an essential element of his fraudulent scheme.

 Szarwark also argues that the government failed to present sufficient proof that he actually mailed the trust account checks to the IRS, as charged in Counts I and II of the indictment. However, the government presented evidence that the checks were received by the IRS Service Center in Cincinnati, Ohio, that the Service Center receives checks from taxpayers at a post office box, and that the Service Center is a secure facility that does not receive hand deliveries

from taxpayers. Furthermore, the defense stipulated that only mailed items are delivered to post office boxes. Viewed in the light most favorable to the government, it is clear that the jury was presented with sufficient evidence to find beyond a reasonable doubt that the mailings did in fact occur. *See United States v. Mankarious*, 151 F.3d 694, 702–3 (1998) (finding sufficient evidence that a series of fraudulent invoices were mailed when an employee testified that she routinely mailed invoices, and that she specifically remembered mailing one of the invoices; and the government presented evidence that the recipient of the invoices regularly date-stamped incoming mail, many of the invoices were date stamped, and the timing of the date stamps showed that the invoices were received several days after the invoice date).

## B. Acceptance of Responsibility

■ Before we discuss the government's cross-appeal, we feel compelled to advise that "defendants, who benefit from favorable calls under the federal sentencing guidelines, should think more than twice about appealing their cases when their appeals have little likelihood of success ... because a defendant's appeal may draw a guidelines cross-appeal when the government would [probably] not ... appeal on its own in the first instance." *United States v. Bradley*, 165 F.3d 594, 595 (7th Cir.1999). *See also United States v. Martinson*, 37 F.3d 353 (7th Cir.1994) (affirming conviction but finding clear error in reduction of offense level for acceptance of responsibility). While we find no merit in Szarwark's appeal, we agree with the government's contention on cross-appeal that Szarwark was not entitled to any sentence reduction for acceptance of responsibility.

■ We review a district court's determination of acceptance of responsibility for clear error, bearing in mind the Guidelines' directive that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," and that, consequently, "the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, Application Note 5. Even under this deferential standard, however, Szarwark's sentence reduction cannot stand.

■ The Sentencing Guidelines provide that a defendant who "clearly demonstrates acceptance of responsibility for his offense," is entitled to a two level reduction. U.S.S.G. § 3E1.1(a). In order to receive this reduction, it is normally necessary, (although not sufficient) for the defendant to plead guilty. *United States v. Cunningham*, 103 F.3d 596, 598 (7th Cir.1996); *United States v. Beserra*, 967 F.2d 254, 255 (7th Cir.1992). *See also* U.S.S.G. § 3E1.1, Application Note 3. This bias in favor of guilty pleas arises from the Guidelines' admonition that an acceptance of responsibility reduction "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt." *Id.*, Application Note 2. *See also Cunningham*, 103 F.3d at 598 ("[T]he [acceptance of responsibility] provision is designed in part to help the government and the judiciary avoid the time and expense of trial."); *Beserra*, 967 F.2d at 256 ("The framers of the sentencing guidelines ... wanted to encourage the guilty to plead guilty in order to save the government and the judiciary the costs of trial."). Consistent with this policy, however, a defendant may, in "rare situations," clearly demonstrate acceptance of responsibility even after going to trial if the defendant does so only to "assert and preserve issues that do not relate to factual guilt." U.S.S.G. § 3E1.1, Application Note 2. Unfortunately for Szarwark, this is not one of those "rare situations." Although Szarwark admitted that he embezzled money from his law firm, he put the government to its burden of proof (at a three day trial involving live testimony) by denying that the mailings were in furtherance of his scheme to defraud and by challenging the government's evidence that the mailings actually occurred. While Szarwark was certainly within his rights in contesting these issues, his election to do so forced the government to expend its resources to prove his guilt. Therefore, Szarwark acted in a manner that was inconsistent with acceptance of responsibility. *See id.*, Application Note 1(a).

■ We could, nevertheless, affirm the sentence reduction if we were to find, as the district judge did, that Szarwark made a "voluntary payment of restitution prior to adjudication of guilt." *Id.*, Application Note 1(c). In *United States v. Bean*, we held that voluntary payment of restitution is an independent ground for an acceptance of responsibility reduction. 18 F.3d 1367, 1368 (7th Cir.1994). *See also Beserra*, 967 F.2d at 256 ("The framers of the sentencing guidelines ... wanted to ... reward defendants for concrete acts of ... restitution."). However, unlike the defendant in *Bean*, Szarwark did not repay the entire amount owed (in fact he repaid only $87,346.29 out of $465,998.33). More importantly, his restitution (if you could call it that) was far from voluntary. *See United States v. Hendrickson*, 22 F.3d 170, 176 (7th Cir.1994) ("The very cornerstone for a finding of acceptance of responsibility ... must be the voluntary nature of the act or acts performed which underlie such a finding."). Szarwark left Barnes & Thornburg on April 15, 1997, before his fraudulent scheme was discovered. Under the firm's partnership agreement, Szarwark was entitled to be paid the balance of his capital account sixty days after his departure. However, Barnes & Thornburg discovered Szarwark's fraud before the sixty days were up and exercised its right to offset the $78,185.82 in Szarwark's capital account against the firm's losses from the fraud. The firm also retained $9,160.47 of income which Szarwark had not received prior to his departure. In this way, Barnes & Thornburg was able to recover the $87,346.29 that the district judge subsequently ordered as restitution. This is clearly not what the framers of the Sentencing Guidelines meant by voluntary payment of restitution. Because Szarwark both put the government to its burden of proof and failed to make any voluntary payment of restitution, it was clear error for the district judge to reduce Szarwark's sentence for acceptance of responsibility.

## C. Mandatory Victim Restitution Act

■ Again on cross-appeal, the government challenges the district court's holding that retroactive application of the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, would violate the Ex Post Facto Clause, U.S. Const. Art. I § 9 cl. 3 ("No bill of attainder or ex post facto law shall be passed."). This question is a matter of law which we review *de novo*.

The MVRA, which replaced the Victim and Witness Protection Act (VWPA), is effective for cases in which the defendant is convicted after April 24, 1996. Under the MVRA, restitution is mandatory rather than discretionary for defendants convicted of certain offenses, 18 U.S.C. § 3663A(a)(1) ("Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order ... that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate."), including offenses against property committed by fraud or deceit, 18 U.S.C. § 3663A(c)(1)(ii). *But see* 18 U.S.C. § 3663A(c)(3) (describing very limited circumstances, not applicable to this case, in which the district court may refrain from ordering restitution). More importantly, district courts are no longer permitted to consider a defendant's financial circumstances when determining the amount of restitution to be paid. 18 U.S.C. § 3664(f)(1)(A) ("In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."). However, the district court may take the defendant's financial status into account when determining a payment schedule. *See* 18 U.S.C. § 3664(f)(2)-(3).[1] Because these provisions apply to defendants who are *convicted* after the MVRA's effective date, rather than to defendants who *commit offenses* after the effective date, the MVRA may be applied to defendants whose conduct oc-

---

1. It is noteworthy that under 18 U.S.C. § 3664(f)(3)(B), "[a] restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defen-

dant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments."

curred prior to its enactment, implicating the Ex Post Facto Clause.

The application of a law violates the Ex Post Facto Clause if: (1) the law "operates retroactively (i.e., applies to criminal conduct occurring before its enactment)," and (2) the law "increases the punishment for that criminal conduct." *United States v. Newman*, 144 F.3d 531, 538 (7th Cir.1998). We begin our analysis with the second part of this test because our holding in *United States v. Newman*, decided shortly after the district judge sentenced Szarwark, resolves this case.

In *Newman*, we found that the differences between the VWPA and the MVRA are significant enough to be considered an "increase" in punishment. *Id.* at 537 n. 5. However, we held that restitution does not constitute criminal punishment within the meaning of the Ex Post Facto Clause. *Id.* at 538, 542. Instead, we found that restitution is "an equitable device for restoring victims to the position they had occupied prior to a wrongdoer's actions ... and operates to ensure that a wrongdoer does not procure any benefit through his conduct at the others' expense." *Id.* at 538. Thus, the district court erred in concluding that the MVRA increased the punishment for Szarwark's criminal conduct in violation of the Ex Post Facto Clause.

Because we hold that the MVRA does not increase punishment for criminal conduct, we need not address the issue of whether the MVRA would operate retroactively if applied to Szarwark's criminal conduct, which continued after the MVRA's effective date.

### CONCLUSION

For the reasons set forth above, we AFFIRM Szarwark's conviction, VACATE his sentence, REVERSE the district court's MVRA holding, and REMAND the case to the district court for re-sentencing and recalculation of the restitution amount in conformity with this opinion.