105 F.3d 660
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lenzie DAVIS and Henry Davis, Defendants-Appellants.
 No. 96-2431, 96-2674.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 17, 1996.
Decided Jan. 3, 1997.
 
 Before COFFEY, FLAUM, and EVANS, Circuit Judges.
 
 ORDER
 
 1
 On June 7, 1995, Lenzie Davis and his brother Henry Davis pleaded guilty to one count of wire fraud in violation of 18 U.S.C. §§ 1343 & 2. On May 17, 1996, Lenzie Davis was sentenced to 39 months' imprisonment, and on June 20, 1996, Henry Davis was sentenced to 41 months' imprisonment. Both Lenzie and Henry Davis filed timely notices of appeal and the cases were consolidated for disposition. The Defendants challenge the district court's decision not to grant them a two point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 (1988).[1] We affirm the district court's judgment.
 
 FACTS
 
 2
 In May of 1994, a grand jury returned a 69 count indictment against 18 individual defendants, including Defendants Lenzie and Henry Davis, alleging participation in a complex scheme to defraud financial institutions of approximately $30 million by selling phony leases on office equipment. Originally, both Lenzie and Henry Davis pleaded not guilty. However, after the 16 other defendants pleaded guilty, at least one of the other defendants--Randy Alexander--explicitly agreed to testify against Defendants, and the government informed Defendants that it would seek a superseding indictment charging other criminal conduct, both Lenzie and Henry Davis changed their pleas as to Count One. Although there was no formal plea agreement, at the change of plea hearing the government indicated that it would probably dismiss the remaining counts of the indictment at sentencing. The district court, the Honorable James B. Zagel presiding, accepted Defendants' guilty pleas and ordered presentence investigation reports ("PSR").
 
 Lenzie Davis
 
 3
 Lenzie Davis' PSR states that Lenzie "failed to demonstrate an affirmative acceptance of responsibility." (Lenzie Davis PSR at 8.) It relied on the absence of a written plea agreement and the fact that Lenzie pleaded guilty only after the government informed him it would seek a superseding indictment against him for other criminal conduct to support its recommendation. Further, the PSR stated that in conversations with the probation officer, Lenzie denied submitting fraudulent agreements or agreements with inflated terms, he insisted that--although he paid kickbacks to co-defendant Alexander--originally these payments were for legitimate purposes, he stated that he had intended to deliver all of the equipment indicated in the fraudulent leasing agreements, he denied participation in a "scheme" or "plan" to cheat financial institutions, and he denied all wrongdoing regarding relevant conduct charged by the government. (Lenzie Davis PSR at 8.)
 
 
 4
 At Lenzie's sentencing hearing, his attorney argued that Lenzie deserved the § 3E1.1 reduction because he pleaded guilty and was remorseful. (May 17, 1996 Tr. at 3.) The attorney explained that communication difficulties between Lenzie and his prior attorney had caused Lenzie to misunderstand the law and thereby caused Lenzie to mistakenly challenge the probation officer's recitation of events at their meetings. (May 17, 1996 Tr. at 3.) The Assistant United States Attorney ("AUSA") stated: "I agree not only for the reasons stated by the probation officer that there has been no acceptance of responsibilities, but in effect at every opportunity Mr. [Lenzie] Davis has attempted to minimize and explain away much of his criminal conduct." (May 17, 1996 Tr. at 4.) Lenzie made a statement apologizing to the court for his wrongdoing, expressing remorse for the pain he caused his family and promising not to commit crimes in the future. (May 17, 1996 Tr. at 11-12.)
 
 
 5
 The district court denied the adjustment. First, Judge Zagel said he agreed with the probation officer on the question of Lenzie's acceptance of responsibility. Then, he characterized Lenzie's statements as "post-presentence report reformation." Judge Zagel went on to say:
 
 
 6
 [G]enerally speaking, I am more convinced by what the defendant says to the probation officer before the significance of what is said is clear to the defendant than I am on a later occasion.
 
 
 7
 I have, despite that, awarded acceptance of responsibility and more than once in this kind of situation, because I have heard things that strike me as manifesting true acceptance of responsibility, but I don't hear that today. What I hear is regret ... tremendous regret as to the pain and suffering that he has inflicted on his family, which is not too dissimilar from having tremendous regrets and pain from the damage that one inflicts on one's self when you commit the offense.
 
 
 8
 But the core of acceptance of responsibility ... has to deal with acceptance of responsibility for the harm done to others, and I sense nothing of that in this defendant.
 
 
 9
 (May 17, 1996 Tr. at 12-13.)
 
 
 10
 On appeal, Lenzie argues that Judge Zagel erroneously interpreted U.S.S.G. § 3E1.1 (1988) as requiring that Lenzie accept responsibility for the harm done to others in order to qualify for the adjustment, and based on this incorrect interpretation wrongly denied him an adjustment under § 3E1.1.
 
 Henry Davis
 
 11
 Henry Davis' PSR is virtually identical to Lenzie's.[2] Henry's PSR also relied on the absence of a plea agreement and Henry's failure to plead guilty until the government threatened to bring additional charges as support for its recommendation against granting Henry an adjustment for acceptance of responsibility. (Henry Davis PSR at 8.) It also relied on the following: Henry's insistence that the payments to co-defendant Alexander started out as legitimate payments; his denial that he participated in a "scheme" or "plan" to cheat financial institutions; his denial of involvement in a scheme to defraud; and his denial of involvement in a related money laundering scheme. (Henry Davis PSR at 8.)
 
 
 12
 Henry Davis submitted his version of the offense after his PSR had already been submitted.[3] Regarding the kickbacks to Alexander, Henry stated:
 
 
 13
 We decided that we did not want to pay kick backs [sic], but we did not want to lose additional business.... We agreed to pay Mr. Randy Alexander on two conditions[:] (1) Mr. Randy Alexander would help market to and refer other major accounts ... [and] (2) All payments would be paid by invoice to his consultant company....
 
 
 14
 I did not follow this procedure throughout and I was aware the payments had become kick backs [sic].
 
 
 15
 (Jan. 11, 1996 Supplemental Record at 1-2.) Regarding the fraudulent invoices, Henry stated that "[f]rom 1988 thru-1990 [sic] I was aware that serial number[s], model numbers and payments [sic] amounts did not match our price quote sheet and [that] contracts submitted to financial institutions were incorrect." (Jan. 11, 1996 Supplemental Record at 2.) This was Henry's only statement regarding the contracts in question. He also described how he met Alexander, and explained that "tremendous effort" was required in order to make a profit and that "major corp." had a "relaxed attitude about the accuracy of serial number[ ] assignment[s] for purchase orders and accounting purposes." (Jan. 11, 1996 Supplemental Report at 1.)
 
 
 16
 At Henry's sentencing hearing, Henry's attorney merely stated that he believed, after many discussions with Henry, that Henry had "truly and sincerely in his heart accepted responsibility." (June 20, 1996 Tr. at 4.) The government argued that Henry had "shown true regret of being caught ... but not a whit of acceptance of responsibility for the scope and nature of the vast fraud he committed, [and] that what the probation officer saw, minimization and rationalization, is what is exactly before the court." (June 20, 1996 Tr. at 5.) Henry made a statement indicating that he was recently baptized; that he accepted fully all responsibility for his wrongdoing; that if he could relive it, he would do it differently; and that he regretted any loss he caused anyone based on his transactions. (June 20, 1996 Tr. at 6-7.)
 
 
 17
 Judge Zagel denied Henry any adjustment pursuant to § 3E1.1. He stated:
 
 
 18
 I agree with the position of the probation officer on the question of acceptance of responsibility. I have heard today a somewhat different and better account from Henry Davis than I heard from Lenzie Davis, but I have an abiding conviction that this is a consequence of what I said to Lenzie Davis.
 
 
 19
 I don't think ... there is true acceptance of responsibility. I agree that there is regret ... but I do not think that there is the moral acceptance of responsibility that lies at the heart of [§ 3E1.1].
 
 
 20
 (June 20, 1996 Tr. at 7.)
 
 
 21
 On appeal, Henry argues that Judge Zagel erroneously interpreted § 3E1.1 as requiring acceptance of moral responsibility in order to qualify for an adjustment, and based on this incorrect interpretation of § 3E1.1 wrongly denied him the two point reduction.
 
 DISCUSSION
 
 22
 A district court's decision whether a defendant has accepted responsibility is a finding of fact. Ebbole v. United States, 8 F.3d 530, 535 (7th Cir.1993), cert. denied, 510 U.S. 1182 (1994); United States v. Panadero, 7 F.3d 691, 694 (7th Cir.1993); United States v. Reno, 992 F.2d 739, 744 (7th Cir.), cert. denied, 510 U.S. 971 (1993). We will uphold the district court's factual determination on this issue unless it is clearly erroneous. Ebbole, 8 F.3d at 535; Panadero, 7 F.3d at 694; Reno, 992 F.2d at 744. In particular, a sentencing judge's credibility determinations will be afforded great deference. United States v. Tolson, 988 F.2d 1494, 1498 (7th Cir.1993). The defendant "bears the burden of convincing [this court] that the district court's decision is without foundation in order for us to reverse." United States v. White, 993 F.2d 147, 151 (7th Cir.1993). However, where a district court has interpreted a guideline provision as a question of law, review is de novo. United States v. Hammick, 36 F.3d 594, 597 (7th Cir.1994).
 
 
 23
 Section 3E1.1 provides for a two-level reduction in offense level "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). We have repeatedly held that a sentencing judge's task, in making a § 3E1.1 determination, "is to look for ... a defendant's demonstration of 'genuine remorse' or 'conscience.' " United States v. Dvorak, 41 F.3d 1215, 1217 (7th Cir.1994); see also Hammick, 36 F.3d at 600 ("[T]he sentencing judge is required ... to determine whether the defendant has manifested an acceptance of personal responsibility for his offense in a moral sense."); Reno, 992 F.2d at 745 (affirming district court's decision not to grant § 3E1.1 adjustment because defendant did not accept responsibility in "moral sense"). Further, "a guilty plea entered for the apparent purpose of obtaining a lighter sentence does not entitle a defendant to a reduction for acceptance of responsibility." Hammick, 36 F.3d at 600; see also Dvorak, 41 F.3d at 1217 ("A sentencing judge should not award a two-level reduction under § 3E1.1(a) for spin control."); Panadero, 7 F.3d at 694 ("[O]ur precedents ... recognize the distinction between acceptance of responsibility and merely seeking to reduce one's sentence."); White, 993 F.2d at 151 ("A desire to minimize a criminal sentence is distinguishable from acceptance of responsibility--the former will not provide a basis for a § 3E1.1 reduction.").
 
 
 24
 Here, Judge Zagel appropriately considered whether Lenzie and Henry Davis accepted responsibility for their crimes. He found that they did not. First, Judge Zagel found Lenzie Davis to be suffering from "post-presentence report reformation." (May 17, 1996 Tr. at 12.) In other words, Judge Zagel found that Lenzie Davis was engaging in spin control in an attempt to minimize his sentence. Then, Judge Zagel found Henry Davis' expressions of remorse "to be a consequence of what [he] said to Lenzie Davis." (June 20, 1996 Tr. at 7.) That is, he found Henry Davis' apology to be contrived--again, an effort at spin control. In both cases, Judge Zagel explicitly stated that he agreed with the probation officer's recommendation and found that neither Lenzie nor Henry Davis had truly accepted responsibility for their criminal conduct.
 
 
 25
 The record amply supports these findings. First, neither Defendant pleaded guilty until it was clear that the government had an ironclad case against them and had threatened them with a superseding indictment. It is reasonable to conclude that, once the Defendants gave up the fight, their only interest was in minimizing their sentences. Even then, the Defendants continued to minimize and rationalize their wrongdoing at their change of plea hearing and at their meetings with the probation office. Henry even submitted a written version of events in which he "justified" engaging in the fraudulent scheme by blaming the victim-corporations' "relaxed attitude." Judge Zagel's determination that Lenzie and Henry Davis were not credible in their expressions of remorse is not clearly erroneous.
 
 
 26
 Lenzie Davis argues that the case law does not support Judge Zagel's determination that § 3E1.1 requires a defendant to express remorse for the harm caused to victims of the defendant's criminal conduct, and even if it did, the record shows Lenzie was concerned for the victims of his fraud. This argument fails for two reasons. First, whether a defendant expresses remorse for harm caused to victims of his crime informs a sentencing judge's determination of whether a defendant has demonstrated genuine remorse or conscience. Thus consideration of this factor is entirely appropriate in making a determination under § 3E1.1. Second, Judge Zagel found Lenzie's expressions of remorse to be an insincere attempt to reduce his sentence, so even if Lenzie did express concern for his victims, Judge Zagel determined it to be insincere concern. Again, we will not disturb this credibility determination.
 
 
 27
 Henry Davis argues that Judge Zagel inappropriately considered whether he had morally accepted responsibility for his criminal conduct. As stated above, a sentencing judge's consideration of whether a defendant has accepted moral responsibility when awarding a § 3E1.1 reduction is entirely valid.
 
 
 28
 Finally, Henry Davis argues that Judge Zagel used "an essentially standardless approach" in making the § 3E1.1 determination because he shifted the standard from acceptance of responsibility for the harm he caused others to acceptance of moral responsibility. (Davis Reply Br. at 8.) This is an argument without merit; a distinction without a difference. The fact that Judge Zagel chose to use different phrases to describe the quality he saw lacking in the Defendants is irrelevant.
 
 
 29
 For these reasons, the district court judgment is AFFIRMED.
 
 
 
 [1]
 The parties agree that the version of § 3E1.1 in effect between November 1, 1987 and October 31, 1992 applies to this case. (See Davis Br. at 11-12; Government Br. at 14 n. 8.)
 
 
 [2]
 The primary difference between Lenzie's PSR and Henry's PSR is that Henry submitted an untimely version of the offense, whereas Lenzie Davis did not submit a version of the events
 
 
 [3]
 The Probation Department filed a copy of Henry's submission in the district court. In a cover letter, the probation officer stated: "Due to the untimely submission of this statement, the probation officer does not recommend changes in the presentence investigation report or the sentencing guidelines." (Jan. 11, 1996 Supplemental Report Cover Letter.)