**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James E. DVORAK, Defendant–Appellant.**

No. 94–2153.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1994.

Decided Dec. 12, 1994.

Thomas Scorza, Asst. U.S. Atty., Matthew Crowl (argued), Office of U.S. Atty., Crim. Div., Barry Rand Elden, Asst. U.S. Atty., Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Matthias A. Lydon (argued), Lydon & Griffin, Chicago, IL, for defendant-appellant.

Before CUMMINGS, GOODWIN,* EASTERBROOK, Circuit Judges.

GOODWIN, Circuit Judge.

After entering a negotiated guilty plea to two counts of a twenty count indictment charging bribery and tax offenses, James Dvorak requested but was denied a two level reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). The only issue on appeal is whether the district court clearly erred in finding that the purported acceptance of responsibility was inadequate. It did not, and the judgment is affirmed.

## I. The Offense

Dvorak, while Undersheriff of Cook County, and Chairman of the Central Committee of the Cook County Republican Party, began taking bribes from Marc Zaransky and his brothers. Over a four-year period, he accepted from the Zaranskys the use of eight automobiles, free of charge, but with a fair-market lease value of nearly $70,000. No specific *quid pro quo* agreement existed between Dvorak and the Zaranskys, but Dvorak understood that the Zaranskys wanted to ingratiate themselves with him so that he would use the power and influence of his office to steer business their way. Dvorak attempted to steer a large Sheriff's Office contract for a fleet of police vehicles to the Zaranskys. This effort failed because the Cook County Board, and not Dvorak, nor the Sheriff's Office, controlled the award of such a large contract for fleet vehicles. Dvorak did participate, however, in an arrangement to direct personnel at the Cook County Jail commissary to begin ordering certain supplies from a Zaransky company.

Dvorak also accepted from a sheriff's office deputy, one Paul Wolfe, an $8,000 gold Rolex watch. Deputy Wolfe saw the Rolex as a down payment for future job security. Dvorak kept the watch, and Deputy Wolfe kept his job.

Meanwhile, Dvorak filed tax returns on which he failed to report either the watch or the market value of the free use of the automobiles.

## II. The Sentencing Hearing

The sentencing judge held a hearing pursuant to U.S.S.G. § 6A1.3 to resolve factual disputes in the plea agreement. One of the issues presented for resolution was whether U.S.S.G. § 2C1.2 ought to apply to Dvorak's acceptance of bribes, rather than § 2C1.1. If the watch and cars accepted by Dvorak were essentially gratuities rather than *quid pro quo* benefits, § 2C1.2 would apply. Dvorak took the position that he never promised to do anything, and in fact never did do anything, in exchange for the gifts. He stated that Deputy Wolfe and the Zaranskys would have received the identical favors from him even if they had given him nothing. For example, he stated that he would have given favorable treatment to the Zaranskys in any event, because they were loyal political supporters. From Dvorak's expressed point of view, his acceptance of the watch and cars made him guilty of bribery in only a technical sense.

After hearing Dvorak's testimony at the § 6A1.3 hearing, the government opposed the requested two-level reduction for accep-

---

* The Honorable Alfred T. Goodwin, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

tance of responsibility. The government argued that Dvorak had lied at the § 6A1.3 hearing, and sought a § 3C1.1 sentence enhancement for obstruction of justice. The court rejected the prosecution's argument that Dvorak had obstructed justice, but agreed that he had not accepted responsibility within the meaning of § 3E1.1(a), and was not entitled to the two-level reduction.

The court found that Dvorak had made a "grudging," though "sincere" statement, but concluded that Dvorak's acceptance of responsibility did not go far enough. The briefs of both the government and the appellant attempt to parse the language of the sentencing hearing, fastening, in the appellant's brief, on "sincere," and in the government's brief, on "grudging".

### III.  Discussion

We decline to parse the phrases word by word.  We likewise decline the invitation to draft a formula that will in all cases satisfy the Guidelines' expectations for a valid *mea culpa*.  The subjective nature of "acceptance of responsibility" in light of all the facts, and the behavior of the convicted person at the hearing, make the award or the denial of the reduction one of the remaining areas of sentencing in which the judge can exercise a judicial function.

We review the finding of fact for clear error.  *United States v. Osmani*, 20 F.3d 266, 269 (7th Cir.1994).  *See* U.S.S.G. § 3E1.1, App. Note 5 ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.  For this reason, the determination of the sentencing judge is entitled to great deference on review.");  *United States v. Kerr*, 13 F.3d 203, 205 (7th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1629, 128 L.Ed.2d 353 (1994).

■  At the sentencing hearing, the defendant who seeks a two-level reduction under § 3E1.1(a) must show that he *clearly* recognizes and affirmatively accepts responsibility for his conduct.  U.S.S.G. § 3E1.1(a) (the sentencing judge may reduce a defendant's offense level by two if "the defendant clearly demonstrates acceptance of responsibility for his offense.").

■  What the sentencing judge is to look for is a defendant's demonstration of "genuine remorse," or "conscience." *United States v. Beserra*, 967 F.2d 254, 256 (7th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 419, 121 L.Ed.2d 341 (1992).  Where to find it, and how much is enough, are profound questions.  The concept of contrition is not readily separable from the concept of a person.  We have refrained from formulating categorical tests, preferring to leave it to the sentencing judges to apply common sense to the testimony they hear and the defendants they observe.

In reviewing § 3E1.1(a) determinations, while emphasizing that expiatory deeds speak louder than words, we have recognized that a defendant's words do make a difference.  *Kerr*, 13 F.3d at 205.  Not by sounding the right note at sentencing time—pat recitations of responsibility are not enough under § 3E1.1(a)—but by tending to reveal a wholesome state of mind.  *See Beserra*, 967 F.2d at 256 ("breast beating before the sentencing judge is a debased currency indeed.").  Claudius says "My words fly up, my thoughts remain below.  Words without thoughts never to heaven go," and we see how pietism passes for piety.

■  Words which betoken acceptance of responsibility are different from spin control.  A sentencing judge should not award a two-level reduction under § 3E1.1(a) for spin control.  Dvorak argues that his minimalist description of his crimes was not spin control, but merely a description of how he went about rationalizing his crimes at the time he committed them.  The sentencing judge thought otherwise.  He thought that, whether from pride, or blindness, or an attempt to minimize his punishment, Dvorak continued to rationalize his crimes as technicalities.  Dvorak mischaracterizes what the sentencing judge was up to when he argues that the judge "criticized his words": the sentencing judge criticized what sentiments lay behind the words.  He saw spin control.  We cannot say that he clearly erred.

AFFIRMED.