**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Melvin MOORE, also known as John
M. Streed and Donald Strapp,
Defendant–Appellant.**

**No. 97–1390.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1997.

Decided Oct. 21, 1997.

Paul Garcia (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Gerardo S. Guiterrez (argued), Chicago, IL, for Defendant–Appellant.

Before BAUER, RIPPLE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

This is a direct criminal appeal. Melvin Moore was charged in an indictment with knowingly possessing fifteen or more unauthorized account "access devices" with intent to defraud in violation of 18 U.S.C. § 1029(a)(3). He pleaded guilty to the charge without a plea agreement and was sentenced. Mr. Moore now challenges aspects of that sentence. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

Melvin Moore, who is known by many aliases, was driving a U-haul truck in Illinois when it ran out of gas. Police officers came to his assistance, became suspicious and searched the vehicle with Mr. Moore's consent. They discovered Mr. Moore had several false identifications in various names, but with his picture on each of them; he also had a book containing 96 credit card numbers. Mr. Moore was arrested. It was later learned that Mr. Moore used the fake identifications and credit card numbers to purchase goods totaling in excess of $28,000.

Mr. Moore was charged under 18 U.S.C. § 1029(a)(3),[1] with knowingly possessing fifteen or more access devices with intent to defraud. Section 1029(e)(1) defines "access device" to mean "any card, plate, code, account number ... or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value." Mr. Moore pleaded guilty to the charge. In sentencing Mr. Moore, the district court applied an enhancement to the base offense level because the scheme to defraud affected more than one victim. The court also determined that, in accordance with the Mandatory Victims Restitution Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (codified in pertinent part at 18 U.S.C. § 3663A), it was required to order Mr. Moore to pay full restitution. He was sentenced to 16 months of imprisonment and 3 years supervised release. In addition, he was ordered to pay restitution in the amount of $28,833.06, at the rate of $200 per month, commencing two months after his release from prison.

## II

## DISCUSSION

### A. Enhancement for Multiple Victims

Mr. Moore contends that the district court erred when it increased his offense level by two points on the ground that his fraud involved "more than one victim." See U.S.S.G. § 2F1.1(b)(2). In Mr. Moore's view, the nature of the substantive offense already takes this factor into account. He notes that he was convicted of possessing more than 15 access devices and contends that, when 15 or more access devices are involved, there will always be more than one victim, and further enhancement of the sentence constitutes double counting.

---

1. 18 U.S.C. § 1029(a)(3) indicates that whoever "knowingly and with intent to defraud possesses fifteen or more devices which are counterfeit or unauthorized access devices ... shall, if the of-

fense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section."

We do not believe that Mr. Moore can prevail on this contention for several reasons. First, we cannot accept his assertion that, because the substantive offense involves possession of 15 or more access devices, there necessarily must be multiple victims of the crime. The Guidelines define, in pertinent part, a victim as "a person or entity from which the funds are to come directly." U.S.S.G. § 2F1.1 App. n. 3. The criminal code, moreover, defines the term "access device" in the broadest possible terms.[2] It therefore is certainly possible that a person could obtain 15 or more account numbers or other "access devices" from a single bank or corporation. In that situation, there well might be but a single victim. Therefore, for purposes of sentencing an offender found guilty under 18 U.S.C. § 1029(a)(3), the offense may not always involve multiple victims.

In any event, the decision of the district court to apply the enhancement also rests on an alternative ground that provides firm independent and adequate support for the imposition of the enhancement. Section 2F1.1(b)(2) provides for an increase if the offense "involved (A) more than minimal planning, or (B) a scheme to defraud more than one victim." The district court explicitly found that Mr. Moore's offense included both elements. *See* Sent. Tr. at 36. There-

fore, even if the enhancement could not be imposed because of multiple victims, the district court's determination that there was more than minimal planning would adequately support the increase.

### B. *Restitution*

■ The district court was required to impose an order of restitution in this case. *See* 18 U.S.C. § 3663A(c)(1)(A)(ii).[3] At sentencing, Mr. Moore made no objection to the entry of an order of restitution or to the court's methodology in determining the amount of restitution and the installment payments. His contentions on appeal are therefore subject to the plain error standard of review. *United States v. Simpson*, 8 F.3d 546, 551 (7th Cir.1993).

An examination of the transcript reveals no such error. The record clearly reflects that the district court took into consideration Mr. Moore's financial potential when it determined the amount of payments that ought to be expected during Mr. Moore's period of supervised release and directed the probation officer to advise the court if Mr. Moore's circumstances turned out to be different. Notably, in the process of assessing Mr. Moore's financial situation, the district court explicitly declined to fine him because it

---

2. 18 U.S.C. § 1029 provides:

Section 1029. Fraud and related activity in connection with access devices

. . . .

(e) As used in this section-

(1) the term "access device" means any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument);

(2) the term "counterfeit access device" means any access device that is counterfeit, fictitious, altered, or forged, or an identifiable component of an access device or a counterfeit access device;

(3) the term "unauthorized access device" means any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud;

(4) the term "produce" includes design, alter, authenticate, duplicate, or assemble;

(5) the term "traffic" means transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of;

(6) the term "device-making equipment" means any equipment, mechanism, or impression designed or primarily used for making an access device or a counterfeit access device; and

(7) The term "credit card system member" means a financial institution or other entity that is a member of a credit card system, including an entity, whether affiliated with or identical to the credit card issuer, that is the sole member of a credit card system.

(8) the term "scanning receiver" means a device or apparatus that can be used to intercept a wire or electronic communication in violation of chapter 119.

3. This statute was amended, effective April 24, 1996. The amended version applies to Mr. Moore whose offense and sentencing took place after that date. *See generally United States v. Trigg*, 119 F.3d 493, 497 n. 1 (7th Cir.1997).

doubted his ability to pay both restitution and a fine. See Sent. Tr. at 49.

We perceive no basis for disapproval of the district court's decision. Our cases require that a defendant claiming that the district court failed to consider his financial status in ordering restitution must show that either " '(1) it is not improbable that the judge failed to consider the mandatory factor and was influenced thereby, or (2) the judge explicitly repudiated the mandatory factor.' " *United States v. Zaragoza*, 123 F.3d 472, 478 (7th Cir.1997) (quoting *United States v. Murphy*, 28 F.3d 38, 41 (7th Cir.1994)), *cert. denied*, — U.S. —, 118 S.Ct. 317, — L.Ed.2d — (1997). Mr. Moore makes no claim that the district court explicitly repudiated consideration of his ability to pay the ordered restitution. It is also clear from the record that the judge did consider Mr. Moore's ability to pay in setting the amount of restitution payments that ought to be expected.

## CONCLUSION

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.