UNITED STATES of America, Plaintiff–Appellee,

v.

Carlton T. McINTOSH, Defendant–Appellant.

No. 98–4023.

United States Court of Appeals, Seventh Circuit.

Argued May 21, 1999.

Decided Jan. 5, 2000.

Sharon Jackson (argued), Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

Howard N. Bernstein (argued), Indianapolis, IN, for Defendant–Appellant.

Before FLAUM, KANNE and ROVNER, Circuit Judges.

KANNE, Circuit Judge.

Carlton McIntosh pleaded guilty to one count of money laundering. The district court sentenced him to seventy-eight months imprisonment and three years supervised release. While it imposed no fine, it did order him to pay restitution in the amount of $38,764.50. McIntosh believes the district court improperly calculated his sentence under the United States Sentencing Guidelines by denying him a downward departure for acceptance of responsibility, erroneously determining the amount of restitution and failing to consider his ability to pay restitution. We disagree and affirm the sentence.

## I. History

In March 1997, McIntosh was serving a sentence for a bank fraud conviction out of the U.S. District Court in St. Louis. He was incarcerated at the federal prison facility in Duluth, Minnesota. Under the

Interstate Agreement on Detainers, federal officials released McIntosh to the custody of the State of Illinois. After pleading guilty in state court to forgery and being sentenced to time served, he was inadvertently released from state custody and not returned to federal custody. McIntosh remained at large and did not voluntarily surrender himself to federal officials. Shortly after his mistaken release, McIntosh was charged with escape in U.S. District Court in Minnesota.

While attempting to evade capture, McIntosh opened three accounts with Bank One in Kenosha, Wisconsin. Two were in the name of "Irwin Hardis," and the third was in the name of "Hardis Investment Services." When establishing these accounts, he deposited checks into them drawn from accounts with either no money in them or accounts with insufficient funds. Then, he attempted to make withdrawals from the three new accounts. The largest single withdrawal appears to be a cashier's check provided to him by Bank One in the amount of $28,900.00 from the "Hardis Investment Services" account.

U.S. Marshals apprehended McIntosh in late April in Indianapolis. At the time of his arrest, he was driving a 1994 BMW that he had purchased with the Bank One cashier's check. They also recovered from him $1,558.54 in cash.

Before McIntosh returned to Minnesota to face the charges for escape, the government charged him in the Southern District of Indiana on April 30, 1997, with a two count criminal complaint alleging bank fraud and money laundering. An arrest warrant was issued based on the criminal complaint. Subsequently, the escape charge in Minnesota was dismissed, and on May 1, 1997, the arrest warrant issued in Indianapolis was executed. On May 30, 1997, the government filed a single-count information, charging McIntosh with bank fraud under 18 U.S.C. § 1344. For a period of ten months, plea negotiations ensued between McIntosh and the government, but ultimately McIntosh refused to enter into a plea agreement. With the breakdown in plea negotiations, a grand jury returned an indictment on March 3, 1998, charging McIntosh with one count of money laundering under 18 U.S.C. § 1957. On that same day, the government moved to dismiss the pending bank fraud information. That information was dismissed on March 16, 1998.

In response, McIntosh filed a motion to dismiss based on the Speedy Trial Act, alleging that it barred prosecution of the money laundering charge because the government failed to try McIntosh within seventy days of filing the charging information and that the indictment was returned ten months after his arrest. After holding an evidentiary hearing, the district court denied the motion, concluding that the bank fraud and money laundering charges were different and that the clock on the money laundering charge in the indictment did not begin to run with the bank fraud charge in the information. The district court concluded that the government had not exceeded the seventy-day limit with regard to the money laundering charge because the delay resulted from various extensions requested by McIntosh. The district court also found "no suggestion of bad faith on the part of the government," but rather that "the delay that did result was caused by protracted plea negotiations between the parties."

Five days before he was scheduled for trial, McIntosh requested to enter a plea of guilty without a plea agreement. The district court held an evidentiary hearing, during which it advised him of his rights and accepted his guilty plea. McIntosh subsequently filed *pro se* a request to dismiss his counsel and set aside his guilty plea. He contended that the government's indictment failed to allege a federal offense because it did not assert that the bank was federally insured. In addition to requesting that the district court dismiss the case with prejudice, he claimed his court-appointed counsel refused to act on this issue

and requested new counsel. At sentencing, however, he withdrew the motion. In a separate motion, McIntosh objected to the Presentence Investigation Report ("PSI") because of its calculation of points under the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") and its calculation of restitution. The district court sentenced him to serve seventy-eight months imprisonment and three years supervised release and to pay $38,764.50 in restitution to Bank One for its direct losses due to his criminal activity.

## II. Analysis

McIntosh appeals his sentence and the assessment of restitution. First, he claims the district court erred when it denied him a two-level decrease under U.S.S.G. § 3E1.1(a) for acceptance of responsibility. Second, he contests the district court's order of restitution, contending that no evidence supports the amount Bank One lost, that he should be credited for the property the government confiscated when he was arrested, and that the court failed to consider his economic status when imposing the order.

### A. Acceptance of Responsibility

 McIntosh's first challenge to his sentencing involves the district court's denial of a two-level decrease in his base offense level for acceptance of responsibility in accordance with U.S.S.G. § 3E1.1(a). We review a district court's factual determination regarding acceptance of responsibility for clear error. *See United States v. Jones,* 52 F.3d 697, 700 (7th Cir.1995). We will reverse the finding only if the record contains no evidence providing a foundation for it. *See id.* The district court is entitled to great deference in making these determinations because it is "in a unique position to evaluate a defendant's acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. 5. "The question of whether a defendant has accepted responsibility for his crimes is a factual one, depending largely on credibility assessments of the sentencing judge." *United States v. Rosalez-Cortez,* 19 F.3d 1210, 1218 (7th Cir.1994) (quoting *United States v. Skinner,* 986 F.2d 1091, 1100 (7th Cir.1993)).

 Under U.S.S.G. § 3E1.1(a), a district court may grant a defendant who "clearly demonstrates acceptance of responsibility for his offense [a]decrease [in] the offense level by 2 levels." The accompanying commentary explains that a district court may consider, but is not limited to, the truthfulness of the admission, the false or frivolous denial of additional relevant conduct, voluntary termination or withdrawal from the criminal conduct or association, voluntary payment of restitution prior to adjudication of guilt, voluntary surrender to authorities promptly after commission of the offense, voluntary assistance to authorities in recovering the fruits and instrumentalities of the offense, voluntary resignation from offices held during the offense, post-offense rehabilitation efforts, and timeliness of manifestation of acceptance of responsibility. *See id.* cmt. 1. Simply pleading guilty does not entitle a defendant to an automatic reduction. *See id.* at cmt. 2. The burden, however, rests with the defendant who enters a guilty plea to establish that he is entitled to a reduction. *See United States v. Taylor,* 72 F.3d 533, 549 (7th Cir.1995), *dismissal of post-conviction relief affirmed by* 142 F.3d 440 (7th Cir.1998).

 In light of our deference to district courts, "[w]e have refrained from formulating categorical tests, preferring to leave it to the sentencing judges to apply common sense to the testimony they hear and the defendants they observe." *United States v. Dvorak,* 41 F.3d 1215, 1217 (7th Cir. 1994). When the district court considers this type of decrease, it should assess the defendant's "demonstration of 'genuine remorse,' or 'conscience.'" *Id.* "A judge may determine that a defendant has failed to accept responsibility by finding that he failed to demonstrate truthfulness and remorse prior to 'the final hour.'" *Rosalez–Cortez,* 19 F.3d at 1219 (quoting *United*

States v. Osborne, 931 F.2d 1139, 1155 (7th Cir.1991)). "A 'grudging and incomplete admission, accompanied by an excuse to minimize his own culpability, does not indicate acceptance of responsibility.' " *Id.* at 1220 (quoting *United States v. Aquilla,* 976 F.2d 1044, 1053 (7th Cir.1992)).

■ The transcript of the sentencing hearing reflects the district court's reluctance to accept McIntosh's plea as indicative of true remorse. Specifically, the district court stated:

> At this point I'm not persuaded that Mr. McIntosh has accepted responsibility for his conduct, given the developments in this case up to today, and I would be happy to hear anything [the defense] has to say on that subject. Ordinarily, someone who pleads guilty will be entitled to a two level reduction for acceptance of responsibility. And I think in all prior cases I have given that adjustment—to someone who has pled guilty—at the bottom. However, I believe the district court is called upon to make some assessment of whether the defendant reflects some moral recognition of the wrongfulness of his conduct and acceptance of the appropriate punishment for that conduct, and at this point I have serious doubts as to whether that's appropriate here.

In response, McIntosh's attorney attempted to explain McIntosh's belief that he wanted to admit his guilt and also desired to "be dealt with [according to] his interpretation of being treated justly and fairly." McIntosh also addressed the court, stating that "all I've been trying to do is get this process over with, over with, over with" since he first spoke with federal officials in May 1997. The court, however, expressed disbelief as to the sincerity of McIntosh's comments:

> How do you reconcile what you just told me, Mr. McIntosh, with the effort to have the case dismissed on speedy trial grounds, and your communication two or three weeks ago asking to have the indictment dismissed because it didn't say

that Bank One is insured by the F.D.I.C.?

The district court heard arguments from both sides as to whether McIntosh attempted to manipulate the system or merely attempted to exercise his constitutional rights. McIntosh claims that his motion under the Speedy Trial Act, in which he sought to have the case dismissed based on the ten months of failed negotiation between himself and the government, arose from being treated unfairly by the government. The government characterized the motion differently: "It is our belief that Mr. McIntosh is attempting to manipulate the system and he has done that from the beginning."

The government also explained that the plea negotiations involved a deal for a guilty plea to bank fraud charges or the government would seek to indict McIntosh for money laundering. "When push came to shove, and Mr. McIntosh got every single term he wanted in the plea agreement, [as a witness testified during the hearing on the Speedy Trial Act motion], he said no, I'm not signing. In essence [he] put everyone in a trick bag for that."

The government further reminded the court that after agreeing to plead guilty to the money laundering charge, McIntosh "at the 11th hour ... [attempted another] manipulation where he's seeking to dismiss the charges rather than go through with this prior conduct." McIntosh closed the discussion on this issue with the district court by denying that the initial plea agreement was stacked completely in his favor.

After hearing these arguments, the district court stated its findings:

> [A]s I indicated earlier—I have, I believe in all prior cases involving guilty pleas, granted [a downward deduction for acceptance of responsibility]. I do not believe it is appropriate in this case. I want to explain what I am considering in making that judgment and what I am not considering. I am not considering

the give and take in plea negotiations. I am not considering objections raised to the presentence report's guideline calculations ... I think that—that anybody is entitled to do that and [that] does not affect the acceptance of responsibility issue, unless they're arguing in essence the scope of relevant conduct in the particular case or that it may be relevant. What I do find difficult—well, for me impossible to reconcile with genuine remorse in this case—is Mr. McIntosh's efforts to seek dismissal in this case on speedy trial act grounds, and then on an extraordinarily technical reading of the indictment even after he had pled guilty. I think [the government's] use of the phrase trick bag or attempted trick bag is correctly accurate in describing the attempted manipulation of the system here. And for that reason, I don't believe that Mr. McIntosh has exhibited the kind of remorse that would entitle him to 3E1.1 reductions, although he has admitted the technical elements of the offense charged here.

On appeal, McIntosh argues that the district court's reasoning is improper because it denied him the decrease as a way to punish him for exercising his constitutional right to a speedy trial, challenging a defective indictment, and his repetitive pattern of conduct. He believes his "early" admission of guilt coupled with a complete and truthful admission of it entitle him to the reduction. We disagree.

Initially, we observe that the statements by the district court at sentencing demonstrate that it did not consider McIntosh's four convictions for bank related offenses during a period of four years as a basis for rejecting his acceptance of responsibility. Nevertheless, the district court has a responsibility to look at the whole picture when making its determination of whether a defendant has genuine remorse.

In determining a defendant's sincerity, the district court has an opportunity to observe a defendant "firsthand" during the course of a criminal case. That assess-

ment, of course, is aided by the knowledge of a defendant's prior conduct, background, and experience (typically through a PSI), which is used to place the physical observations of the defendant by the court in a broader context. Determining believability cannot be accomplished in a vacuum.

Here, it was no doubt significant for the district court to know that, in carrying out a series of crimes, McIntosh habitually employed deceit. In conning financial institutions through a pattern of deception, McIntosh used seven aliases and five bogus social security numbers.

In addition, the criminal charge at issue here hardly represents McIntosh's first encounter with the judicial process. For example, in 1994, McIntosh pleaded guilty to one count of bank fraud in the U.S. District Court in St. Louis in accordance with a plea agreement that acknowledged his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. While awaiting sentencing on his plea of guilty, his bond was revoked for again engaging in a bank fraud scheme while released pending sentencing. After serving the twelve-month sentence of incarceration handed down by the federal court in St. Louis, McIntosh began a period of supervised release. The supervised release was revoked in 1995 based on criminal activity involving bank fraud committed during the term of supervision. These factors would certainly be useful to place in context McIntosh's profession of remorse in this case and conduct during the course of the proceedings below.

Thus, with foregoing in mind, we examine the other two grounds raised by McIntosh—his allegation that in denying acceptance of responsibility the district court improperly focused on his speedy trial challenge and his contention that the indictment for money laundering was defective. From the circumstances of the sentencing hearing, it is clear that the district court did not penalize him for seeking

these remedies. Rather, the district court considered these two motions as part of the larger procedural history of the case.

■ A district court may consider procedural history and whether a defendant has attempted to manipulate the system when determining whether that defendant has sincerely accepted responsibility under the Sentencing Guidelines. *See United States v. Trussel*, 961 F.2d 685, 691(7th Cir.1992). While a defendant may not be denied a decrease for exercising his constitutional rights automatically, *see United States v. Purchess*, 107 F.3d 1261, 1269 (7th Cir.1997), the filing of pre-trial motions may be inconsistent with an acceptance of responsibility. *See United States v. Robinson*, 20 F.3d 270, 275 (7th Cir. 1994). Determining whether a defendant is manipulating the judicial system or simply exercising her rights turns on factual findings and the credibility of the defendant, both of which are "uniquely suited to the intuition and experience of the district judge." *Purchess*, 107 F.3d at 1269.

In this case, the district court did not rush to judgment; it considered arguments from both sides as well as the prior discussions regarding both motions. The court did not express concerns about the fact that McIntosh had filed and argued the motions, but rather the context in which he had raised them. In filing the motion based on the Speedy Trial Act, McIntosh sought to have the case dismissed because of the government's failure to try him on the bank fraud charge alleged in the criminal information and subsequent procurement of an indictment for money laundering ten months after the filing of the initial information. He, however, was partially responsible for the delay because of the extended period during which he and the government tried to reach a plea agreement. We do not question his right to walk away from negotiations that he finds unacceptable. However, this conduct discloses a lack of acceptance of responsibility. He claims to have admitted guilt early on. Yet he actually attempted to avoid prosecution by raising the issue of delay that existed because of his own actions and not from the government acting in bad faith.

■ The situation involving the second motion for dismissal also creates considerable doubt as to McIntosh's sincerity. After having pleaded guilty and acting *pro se*, he sought a dismissal, claiming that the indictment failed to allege a federal offense because it did not refer to Bank One as insured by the F.D.I.C. Pleading guilty then attempting to obtain a dismissal on a frivolous point is disingenuous and wholly inconsistent with acceptance of responsibility.

As the district court determined, these motions were not genuine attempts to exercise legal rights, but rather were calculated maneuvers to avoid ultimate responsibility. The district court was entitled to doubt the credibility of McIntosh based on the whole picture before it, and its assessment was not clearly erroneous. Thus, we find no reason to disturb the district court's ultimate findings and conclusions.

## B. Restitution Order

McIntosh also takes exception to both the amount the district court ordered him to pay in restitution to Bank One and the manner in which the district court considered his financial status. He claims that the district court improperly accepted the PSI calculation of the amount of loss to Bank One without requiring the government to present evidence and that the court failed to credit him with the value of the BMW and cash taken from him when he was arrested in Indianapolis. In addition, he asserts that the district court did not consider his indigent status when it imposed restitution while simultaneously waiving the criminal fine without explanation and required the payment to be immediate.

■ The district court included restitution payments as part of McIntosh's sentence pursuant to the Mandatory Victim

Restitution Act ("MVRA"), 18 U.S.C. § 3663A. We generally review a district court's imposition of an order of restitution for abuse of discretion. *See United States v. Brierton*, 165 F.3d 1133, 1139 (7th Cir. 1999). Because McIntosh only objected to the PSI's failure to include the value of the BMW and cash recovered from him in the calculation of restitution and he did not raise his other objections to the trial court, we review these aspects of the order of restitution for plain error only. *See United States v. Moore*, 127 F.3d 635, 637 (7th Cir.1997).

▆▆▆ The MVRA requires courts to include restitution to the victims as part of the sentence for defendants convicted of specific crimes, including property crimes such as money laundering. *See* 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii). The district court may determine the amount of restitution based on the loss to the victim. *See id.* at § 3663A(b)(1)(B); *see also Brierton*, 165 F.3d at 1139. The court may not consider the defendant's financial status when calculating this amount. *See United States v. Szarwark*, 168 F.3d 993, 997 (7th Cir.1999). The government bears the burden of establishing the amount of loss sustained by the victim. *See* 18 U.S.C. § 3664(e). The district court resolves any disputes between a defendant and the government regarding the amount by a preponderance of the evidence. *See id.*

▆▆▆ McIntosh's first complaint about the restitution order is that the government presented no evidence as to the amount of loss Bank One incurred because of McIntosh's actions. McIntosh, however, did not object to the lack of evidence on this point either in his written objections to the PSI or during the sentencing hearing. Because he failed to contest the amount initially, he has forfeited his right to challenge its accuracy before this Court. *See United States v. Newman*, 144 F.3d 531, 542 n. 11 (7th Cir.1998). Even if he had not forfeited this issue, McIntosh's challenge would still fall short. At sentencing, the district court referred to the PSI, which contained information regarding Bank One's losses and McIntosh's financial circumstances. A court may accept the facts in a PSI as true, unless the defendant produces some evidence, more than mere denials, questioning the PSI's accuracy. *See Purchess*, 107 F.3d at 1268. McIntosh made no such challenge, and thus, the district court did not err by relying on the PSI as support for the amount Bank One lost due to McIntosh's criminal activities.

McIntosh's other challenge to the district court's assessment of the amount of restitution also fails to pass muster. He claims the district court refused to provide him with credit for the property (the BMW and $1558.54 in cash) that the U.S. Marshals seized when they arrested him. Contrary to McIntosh's assertions, however, the district court specifically addressed this point during his sentencing hearing: "The defendant will be entitled to credit on the restitution for property that is already in the government's custody." When the government objected by pointing out that McIntosh had not signed over the property nor had it been forfeited, the court stated: "[I]f he does, he'll be entitled to credit for it." This excerpt establishes that the district court did do exactly what McIntosh claims it did not. We find no error here.

The second way in which McIntosh alleges the district court erred with respect to the order of restitution focuses on the manner by which the court considered his financial status. In his first challenge on this subject, McIntosh asks us to remand the case because the district court did not provide an explanation for why it ordered restitution when it chose to waive a fine.

▆▆▆ "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A); *see also United States v. Grimes*, 173 F.3d 634, 639 (7th Cir.1999).

The court, however, should take the defendant's economic circumstances into account when considering the manner in which or schedule according to which the defendant will be ordered to pay the restitution. *See* 18 U.S.C. § 3664(f)(2); *see also Szarwark*, 168 F.3d at 997. The MVRA, enacted in 1996, does not permit a district court to exercise discretion as to whether it imposes restitution upon a defendant; the statutory language clearly states that it must. *See* 18 U.S.C. § 3663A(a)(1); *see also Brierton*, 165 F.3d at 1139.

 In contrast to the MVRA, the Victim Restitution Act provides district courts with discretion when ordering restitution. *See United States v. Zaragoza*, 123 F.3d 472, 478 (7th Cir.1997). If a court chooses to impose such an order and simultaneously waives a fine because of the defendant's economic circumstances, the court must explain its reasoning. *See United States v. Murphy*, 28 F.3d 38, 42 (7th Cir.1994); *United States v. Berman*, 21 F.3d 753, 759 (7th Cir.1994). The imposition of a fine, like restitution under the Victim Restitution Act, is within the discretion of the district court. *See* 18 U.S.C. § 3572. Thus, waiving a fine because of a defendant's financial status and imposing an order of restitution in light of that same status creates a potential contradiction in sentencing. In such circumstances, we require the district court to provide some explanation for the discrepancy to avoid unexplained contradictions in judgment. *See Berman*, 21 F.3d at 759.

When a district court orders restitution pursuant to the MVRA, no such contradiction exists. The imposition of an order of restitution is mandatory under the MVRA, but the decision to waive a fine is discretionary. By imposing mandatory restitution and waiving the fine, the district court is merely following Congress's mandates. While this approach may appear to foster a contradiction, it is one that Congress created, not the district court. In addition, we find no reason that moves us to require a district court to point out this inherent fact each time the court reaches such a conclusion. Thus, we find no error by the district court as to its imposing restitution under the MVRA and waiving a fine without providing an express reason.

 McIntosh's final objection to the district court's order of restitution based on his financial status relates to the court's decision to require him to pay the restitution "immediately," even though it had waived a fine based on his lack of financial resources. We find no merit to this challenge. " '[I]mmediate payment' does not mean 'immediate payment in full;' rather it means 'payment to the extent that the defendant can make it in good faith, beginning immediately.' " *United States v. Jaroszenko*, 92 F.3d 486, 492 (7th Cir.1996). The district court ordered that the restitution be paid immediately and that McIntosh should "notify the probation officer of any material changes and economic circumstances [that] might affect his ability to pay restitution." Thus, the district court has given McIntosh the opportunity to explain his financial circumstances to the probation officer if problems arise. The probation officer can then ask the district court to amend the order of restitution accordingly or make the order more specific. We have approved similar approaches in the past, *see id.; see also United States v. Ahmad*, 2 F.3d 245, 249 (7th Cir.1993), and McIntosh presents us with no reason that we should consider it error now.

In sum, the district court did not err when imposing the order of restitution.

## III. Conclusion

We find that the district court did not err by refusing to grant a two-level downward departure for acceptance of responsibility because it determined that McIntosh had attempted to manipulate the judicial system and did not express true remorse regarding his actions. Nor do we believe the district court erroneously imposed an

order of restitution that requires McIntosh to compensate Bank One for the loss it entailed due to his fraudulent scheme because McIntosh failed to object to the amount imposed at trial and the district court correctly applied the statutory provisions of the MVRA. Thus, we AFFIRM the sentence imposed by the district court.

ILANA DIAMOND ROVNER, Circuit Judge, dissenting in part.

We have reached a troubling point in our sentencing jurisprudence when we allow defendants to be given longer prison terms—here at least fifteen months longer[1]—based on the legal challenges they have made to matters unrelated to their guilt. I join my colleagues today in affirming the restitution provisions of McIntosh's sentence. But I respectfully part ways with them on the acceptance of responsibility question.

When a court denies a defendant credit for acceptance of responsibility, it typically is because he has refused to genuinely admit his guilt. That is not so here. From virtually the outset of this prosecution, Carlton McIntosh has candidly acknowledged his criminal misdeeds to the government, and ultimately of course he did so to the court when he formally pleaded guilty. This course of conduct constitutes "significant evidence of acceptance of responsibility." See U.S.S.G. § 3E1.1, comment. (n.3) (1998); see also id. (n.1(a)). The district judge nonetheless refused him a sentencing reduction for acceptance of responsibility, not because of anything he said or did not say about his criminal conduct, but because he filed two motions (one of them through his attorney) seeking dismissal of the indictment on legal grounds. I cannot join my colleagues in endorsing this aspect of the sentence.

I agree that under the right circumstances, the content of a defendant's motion, objection, or other pleading can reflect a refusal to accept responsibility for his actions. Our prior decisions recognize that when a defendant makes arguments that, in effect, contest his responsibility for the offense of conviction or conduct that is relevant to it (see U.S.S.G. § 1B1.3), the district court is free to deny him the sentencing reduction under Guidelines section 3E1.1(a) just as it may when the defendant, in allocution, deflects blame for his actions. See, e.g., United States v. Purchess, 107 F.3d 1261, 1266–69 (7th Cir. 1997) (defendant's objections to pre-sentence report challenged facts related to relevant conduct); United States v. Trussel, 961 F.2d 685, 691 (7th Cir.1992) (defendant filed motion seeking to withdraw guilty plea based on assertions in conflict with statements he made under oath at change of plea hearing). But we have never before today suggested that a defendant may be denied credit for acceptance of responsibility based solely on legal or procedural arguments that in no way question his own conduct. Although my colleagues, like the district judge, posit that McIntosh pursued his motions in a manner that was inconsistent with taking responsibility for his crime (ante at 1002), the record simply does not bear them out on that point. The decision to affirm the district court without that support sets an alarming precedent that may discourage attorneys from vigorous advocacy on behalf of their clients and penalize defendants for their uninformed, pro se pleadings.

My colleagues rightly emphasize at the outset that the district court's assessment of a defendant's acceptance of responsibility is entitled to great deference. Ante at 999. I could not agree more. Judge Flaum, Judge Kanne, and I have all sat where Judge Hamilton sits today. We

---

1. The sentencing range that the district court referenced was 63 to 78 months, based on an adjusted sentencing level of 19 and a criminal history category of VI. The court imposed the maximum sentence of 78 months. Had the court granted McIntosh the two-level reduction for acceptance of responsibility, the sentencing range would have been 51 to 63 months. See U.S.S.G. Ch. 5, Pt. A (Sentencing Table) (1998).

know first-hand the weighty burden of sentencing. Collectively, we have looked across the bench hundreds of times at the face of a person we are about to send to prison. We have seen the teary eye and trembling hand, heard the quaking voice. We have noted the declaration of remorse, the passionate pledge that this crime was the last. And we have witnessed more than one such defendant later return to crime at the first opportunity. Experience has therefore taught us that not all expressions of remorse are genuine; and yet we also know how hard it can be to determine which ones are real. So if this were a case in which Judge Hamilton had listened to McIntosh's allocution, looked him in the eye, and found sincerity lacking in his expressions of culpability and remorse, then I would be the first to say that we should defer to his judgment. *See, e.g.*, *Purchess*, 107 F.3d at 1269 (Rovner, J.); *see also United States v. Zaragoza*, 123 F.3d 472, 480 (7th Cir.), *cert. denied*, 522 U.S. 923, 118 S.Ct. 317, 139 L.Ed.2d 245 (1997); *United States v. Dvorak*, 41 F.3d 1215, 1217 (7th Cir.1994); *United States v. Kerr*, 13 F.3d 203, 205 (7th Cir.1993), *cert. denied*, 511 U.S. 1060, 114 S.Ct. 1629, 128 L.Ed.2d 353 (1994).

In this case, however, the district judge cited two—and only two—reasons for finding that McIntosh had not accepted responsibility for his crimes, and those are the legal challenges that he raised in his Speedy Trial Act motion and his pro se motion to dismiss the indictment. If our deference is genuine, then it is on those two motions that we must focus. There were, as my colleagues note, other factors argued with respect to the acceptance assessment. But Judge Hamilton expressly disclaimed any reliance upon them. His words are worth repeating:

> I am not considering the give and take in plea negotiations. I am not considering objections raised to the presentence report's guideline calculations....
>
> What I do find difficult—well, for me impossible to reconcile with genuine re-

morse in this case—is Mr. McIntosh's efforts to seek dismissal in this case on speedy trial act grounds, and then on an extraordinarily technical reading of the indictment even after he had pled guilty. R.47 at 23–24. My colleagues also point out that the district court "has a responsibility to look at the whole picture" in evaluating the defendant's remorse. *Ante* at 1001. "[I]t was no doubt significant," they reason, that "McIntosh habitually employed deceit" in defrauding financial institutions (*ante* at 1001); and his criminal history—in particular his habit of committing new crimes while free on bond or supervised release from other charges— "would certainly be useful to place in context McIntosh's profession of remorse in this case and conduct during the course of the proceedings below" (*id.*). All well and good. But as my colleagues candidly acknowledge, the district judge in fact did *not* consider McIntosh's prior crimes in deciding whether he had genuinely accepted responsibility. *See ante* at 1001. We must therefore resist the urge to bolster the district court's findings with rationale that it might have, but did not, articulate. We do as great a disservice to the discretion of the lower court when we posit grounds that the district judge never relied on as when we ignore those on which the judge actually did rely.

I turn first to the Speedy Trial Act motion. One might think, after reading the sentencing transcript and the majority opinion, that McIntosh spent ten months driving a hard bargain with the government and then, ignoring the fact that he himself was partly responsible for the protracted nature of the plea negotiations, did a sudden about face and filed a surprising and essentially inappropriate motion invoking the Speedy Trial Act. *See ante* at 1001 – 02. In other words, to quote the prosecutor, McIntosh "put everybody in a trick bag...." R.47 at 20. I have no doubt that the Speedy Trial Act motion was indeed a surprise, for if there is one thing that this record makes crystal clear,

it is that no one was paying any attention whatsoever to the speedy trial clock. As to the propriety of the motion, two points must be made. First, as the record reveals, a serious Speedy Trial Act question was presented in this case. Second, although it was McIntosh's counsel who filed and prosecuted the Speedy Trial Act motion, the district court never made the inquiry required by our opinion in *Purchess* before holding McIntosh himself responsible for this motion.

It might surprise the reader, as it did me, to learn that in the ten months that passed between the filing of the information and the grand jury's subsequent return of an indictment, McIntosh did not appear in court so much as once. *See* R.11, Docket Sheets for Case No. IP97–CR–0070–01–H/F. No petition to enter a plea of guilty was filed with the information, as is typically the case. *See* R.19 at 4. Indeed, McIntosh was never asked, on the record, how he wished to plead to the information. In apparent violation of 18 U.S.C. § 3161(a), the case was never scheduled for trial. R.19 at 5. No hearing was conducted during this period to ascertain the status of the case. R. 11, Docket Sheets for Case No. IP97–CR–0070–01–H/F. And at no time was an order entered tolling the 70–day period in which the Speedy Trial Act requires a trial. *Id.*; *see* 18 U.S.C. § 3161(c)(1).

Under these circumstances, it is not at all hard to appreciate why the new attorney appointed to represent McIntosh after the indictment was filed concluded that there was a Speedy Trial Act problem here. Neither he nor anyone else, of course, was under any illusion as to what had been going on for ten months—everyone understood that a guilty plea had been anticipated, that the plea negotiations were complex, and that ultimately talks had broken down. But the fact that close to a

year had passed without a plea, without so much as a status hearing, without any order establishing reasons for tolling the speedy trial clock, all but invited his motion to dismiss. And it was far from clear that the motion lacked merit. The parties' memoranda below, as well as the transcript of the evidentiary hearing that the court conducted on the motion, reflect sharply divergent views, indeed a general befuddlement, even as to the threshold question of when and whether the speedy trial clock had begun to run. *See* R.11 at 4–5; R.15 at 8; R. 19 at 9; R.54 at 41, 46–48, 50, 51,54–58; *see also id.* at 59 (district judge: "I'm not going to try to rule today, I assure you, given the puzzle this presents under various provisions of the Speedy Trial Act."). The government, for example, argued not that the lengthy plea negotiations had stopped the speedy trial clock, but rather that the clock had never begun to tick. R.15 at 8. That remarkable view Judge Hamilton quite rightly rejected. See R.19 at 9–10, citing, among other cases, *United States v. Bailey*, 957 F.2d 439, 443 (7th Cir.), *cert. denied*, 505 U.S. 1229, 112 S.Ct. 3053, 120 L.Ed.2d 919 (1992). Indeed, Judge Hamilton *himself* ultimately agreed that the 70–day period on the bank fraud charge contained in the information had, in fact, expired and that the Speedy Trial Act had thus been violated. R.19 at 10. He simply concluded that a dismissal of the original information, had it been sought before the indictment was filed, would appropriately have been granted without prejudice, leaving the door open to the charge of money laundering that was later asserted in the indictment. R.19 at 13. As a practical matter, then, Judge Hamilton did not believe it appropriate to grant the motion to dismiss the indictment, notwithstanding the Speedy Trial Act violation. *Id.* at 13, 14–15.[2]

---

**2.** Judge Hamilton alternatively reasoned that because the bank fraud charge contained in the information and the money laundering charge asserted in the later-filed indictment were distinct offenses, any Speedy Trial Act violation vis-à-vis the former would not preclude the government from pursuing the latter. R.19 at 11–14.

The most that can be said in criticism of the Speedy Trial Act motion is that McIntosh and his counsel waited until so late in the day to file it. Yet, the reasons for the delay in pursuing the motion are clear and, so far as the record reveals, they have nothing to do with McIntosh himself. First, speedy trial disputes typically arise when, as here, the court and counsel fail to make a contemporaneous record as to the status of the speedy trial clock. When the court conducts regular status hearings in advance of trial, identifies the matters (such as pretrial motions) that will toll the clock, and ascertains that everyone is on the same page as to the time remaining for trial, there will not be the kinds of lingering doubts and questions that invite an eleventh-hour Speedy Trial Act motion. I realize, of course, that Judge Hamilton did keep track of the case informally, through his staff. *See* R.15 at 4; R.54 at 36. But had he made an appropriate record while the plea negotiations were ongoing, he would have obviated any need for an after-the-fact inquiry as to whether and when the speedy trial clock had expired. Second, when McIntosh's current counsel came into the case—after the plea negotiations had come to an impasse and the grand jury had returned the indictment— he recognized the speedy trial question in short order and pursued it promptly. *See* R.13 at 2 ¶¶ 5–6. It turns out that McIntosh's previous counsel, much like the prosecutor, had labored under the impression that the speedy trial clock had not begun to run with the filing of the information (*see* R.19 at 9; R.54 at 41, 46–48, 50, 51, 54–58)—an understanding that was in error. *See* R.19 at 9–10. Third, as the testimony presented to Judge Hamilton on this issue makes clear, McIntosh himself never agreed to waive his rights under the Speedy Trial Act. R.54 at 41. Consequently, I fail to see how he can be blamed for asserting those rights even at a late date, when his counsel did not recognize the speedy trial problem any sooner.

Equally troubling is the fact that the court held McIntosh responsible for the speedy trial motion without ever ascertaining the extent to which McIntosh, as opposed to his counsel, was responsible for the motion. *See United States v. Purchess, supra,* 107 F.3d at 1268–69. In *Purchess,* we recognized the possibility that an attorney may make certain factual assertions on behalf of his or her client— concerning the offense of conviction or relevant conduct, in particular—that are inconsistent with the defendant's acceptance of responsibility. *Id.* at 1266–67. Yet, "the assessment of acceptance of responsibility is typically an assessment *personal* to the defendant." *Id.* at 1267 (emphasis mine). Therefore, where the defendant is otherwise silent as to his attorney's representations, the court has a duty to inquire whether the defendant understands and agrees with what his attorney is saying. *Id.* at 1268–69. If so, the attorney's words "can be and should be attributed to [the defendant]." *Id.* Absent such an endorsement by the defendant himself, the assertions should be disregarded. *Id.* Here, of course, the speedy trial motion made no factual assertions at all regarding McIntosh's conduct; it was simply an assertion of his statutory right to a speedy trial. I have my doubts as to whether such legal or procedural challenges, absent a showing of bad faith, are even relevant to the acceptance of responsibility determination. *See, e.g., Purchess,* 107 F.3d at 1267 ("the district court should not deny the reduction for acceptance simply because the defendant challenges a legal conclusion drawn from the facts the defendant admits"); *see also United States v. Wright,* 133 F.3d 1412, 1416 (11th Cir.) (Kravitch, J., dissenting) ("because such a holding would create constitutional infirmities in the Sentencing Guidelines, other circuits have concluded that legal challenges alone cannot form the basis for a denial of a downward adjustment for acceptance of responsibility") (collecting cases), *cert. denied,* —— U.S. ——, 119 S.Ct. 217, 142 L.Ed.2d 178 (1998). But assuming that they are, the district court was obliged

before holding McIntosh responsible for the motion to confirm on the record that McIntosh himself fully appreciated and embraced the motion. *Purchess*, 107 F.3d at 1268–69. Having failed to make this inquiry of McIntosh, the court could not rely upon the speedy trial motion as a basis for denying McIntosh credit for acceptance of responsibility.

The other motion that the district court cited as evidence that McIntosh had not accepted responsibility for his offense was a pro se motion, made by way of a letter, that in relevant part asked the court to dismiss the indictment because it did not allege that Bank One, from which McIntosh had defrauded the money, was a federally insured institution. *See* 18 U.S.C. §§ 1957(a) & (f)(1), 1956(c)(6); 31 U.S.C. § 5312(a)(2). Judge Hamilton deemed the motion inconsistent with acceptance of responsibility because, based on "an extraordinarily technical reading of the indictment," it sought to dismiss the prosecution after McIntosh had already pleaded guilty. R.47 at 24. Once again, however, when one considers carefully what the record reveals about McIntosh's pro se motion, one finds no support for the notion that McIntosh was attempting to deflect responsibility for his criminal acts.

First, the argument that McIntosh advanced in the motion was that the indictment, in omitting to allege that Bank One was insured by the Federal Deposit Insurance Corporation, failed to state a federal offense. In pleading guilty, of course, McIntosh had waived any *non*-jurisdictional defects in the indictment. *E.g., United States v. Cain*, 155 F.3d 840, 842 (7th Cir.1998). So one might argue that a belated attempt to capitalize on such defects amounts to an inappropriate attempt to make an end run around the plea. But McIntosh's motion posited a jurisdictional defect in the indictment, and we have held that the defendant retains the right to raise such fundamental defects even after pleading guilty. *United States v. DiFonzo*, 603 F.2d 1260, 1263 (7th Cir.1979), *cert.*

*denied*, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980); *accord United States v. Spinner*, 180 F.3d 514, 516 (3d Cir.1999) (collecting cases); *see also* Fed. R. Crim. P. 12(b)(2) (motions asserting that indictment fails to state offense "shall be noticed by the court at any time during the pendency of the proceedings"). The Guidelines themselves recognize that the defendant is entitled to pursue an issue unrelated to factual guilt without forfeiting credit for acceptance of responsibility. Thus, the commentary acknowledges that even a defendant who insists on a trial may yet be eligible for the reduction if he does so "to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." U.S.S.G. § 3E1.1, comment. (n.2). Thus, McIntosh had every right to question the jurisdictional sufficiency of the indictment notwithstanding his guilty plea.

Second, to the extent that the motion lacked merit, as the district court suggested, one must note that McIntosh himself withdrew the motion at the very outset of the sentencing hearing, when the court first mentioned it. R.47 at 2. As McIntosh explained to the court: "I talked it over with my attorney and I found out that I was maybe wrong about the situation." *Id.* So McIntosh did precisely what Rule 11 directs a litigant to do in the civil context when he has filed a frivolous pleading—he retracted it. *See* Fed. R.Civ. P. 11(c)(1)(A). Actually, so far as the record reveals, he did the civil rule one better, by withdrawing the motion before either the court or the government indicated that they viewed the motion as lacking merit. *See id.* In a civil case, such prompt action typically would grant the filer of the pleading "safe harbor" from sanctions, and for the obvious reason—the parties and the court are spared the effort and expense of litigating a groundless contention. *See* Rule 11, Advisory Committee Notes (1993

Amendments).[3] Here the withdrawn motion, in conjunction with the Speedy Trial Act motion, bought McIntosh another fifteen months in jail.

Third, the motion in no way disputes McIntosh's criminal conduct. Because McIntosh himself authored the motion, I have no quarrel with the court's authority to consider what the motion had to say about his remorse and acceptance of responsibility. A defendant certainly can be held responsible for his own choices; and if he opts to file a pleading that takes issue with his factual guilt, the court can treat that as direct evidence that he has not come to terms with his crime. *See, e.g., United States v. Trussel, supra,* 961 F.2d at 691 (district court properly relied on assertions made in defendant's pro se request to withdraw guilty plea). In this respect, McIntosh's pro se motion stands on a different footing than the Speedy Trial Act motion that his attorney filed; there is, in other words, no need for the type of inquiry that *Purchess* demands. *See* 107 F.3d at 1268–69. Yet, McIntosh's motion posited a jurisdictional defect in the indictment, nothing more.

The most for which McIntosh can legitimately be criticized, then, is filing a motion without seeking or heeding the advice of his attorney. I can certainly appreciate why a court might find that course of action frustrating; and had McIntosh not withdrawn the motion, the district judge would have been within his rights to insist that McIntosh either leave the motions practice to his counsel or choose to proceed without representation. *See Hayes v. Hawes,* 921 F.2d 100, 102 (7th Cir.1990). But I am perplexed as to why a single pro se pleading, which had nothing whatsoever to say about the defendant's factual culpability and which was voluntarily withdrawn before the court wasted so much as a minute of time addressing it, could be construed as a refusal to accept responsibility. The reality is, defendants often harbor suspicions at one point or another that their attorneys are not vigorously pursuing every possible argument on their behalf. Regrettably, those doubts are sometimes justified. *E.g., Hall v. Washington,* 106 F.3d 742 (7th Cir.), *cert. denied,* 522 U.S. 907, 118 S.Ct. 264, 139 L.Ed.2d 190 (1997); *Mason v. Hanks,* 97 F.3d 887 (7th Cir. 1996). I don't find it at all surprising that someone like McIntosh, after spending a few hours in a law library, would think the indictment flawed in this case. The statute, after all, criminalizes a particular kind of "monetary transaction," defined as a transaction that, among other things, takes place through a "financial institution," which a series of cross-references in turn reveals to be a federally insured bank. *See* 18 U.S.C. §§ 1957(a) & (f)(1); 1956(c)(6); 31 U.S.C. § 5312(a)(2)(A); 12 U.S.C. § 1813(h). Because the indictment is devoid of any allegation concerning Bank One's insured status, a reasonable layperson—for that matter, an inexperienced lawyer—might readily think the indictment deficient. McIntosh's capable counsel saw the hole in the argument— Bank One in fact *is* a large, federally insured bank, and even if the indictment were technically flawed in failing to so allege, dismissal would be a pyrrhic victory given the government's ability to supersede the indictment. *See* R.47 at 3–4. Sooner rather than later, McIntosh came to appreciate this point. *See id.* at 4–5 ("I thought that the indictment didn't read a federal charge, but he informed me the indictment could be superseded, so that's why I agree with my lawyer at this point in time and go on with sentencing."). No harm was done, and no false protestation of innocence was made.

---

**3.** *Cf. United States v. Garrett,* 90 F.3d 210, 214(7th Cir.1996) (clear error to deny third-level credit for acceptance of responsibility based on uncounseled, pro se motion to withdraw guilty plea that defendant made no attempt to pursue after it was stricken for failure to include original signature and new attorney was appointed to represent defendant).

A final notion remains—that irrespective of their merits, the Speedy Trial Act motion and the motion attacking the indictment evinced an effort to "manipulate" the system. *Ante* at 1001–02; R.47 at 24. Filing motions and invoking a variety of legal rights in an effort to out maneuver one's opponent and secure a favorable outcome is a staple in both civil and criminal cases. If that conduct amounts to manipulation, then manipulation is the hallmark of our adversarial system of justice. Unless and until conducting oneself like a lawyer becomes a basis for meting out longer prison terms, the mere fact that a defendant files a motion that, if successful, might result in the dismissal of the case cannot legitimately suffice to deny him credit for acceptance of responsibility.

As our cases make clear, the only "manipulation" that is relevant to acceptance of responsibility is a motion, objection, or argument that in some way contests the defendant's factual guilt. That is the common theme sounded in each of the three precedents that my colleagues cite: *Trussel, Purchess,* and *Robinson.* *See ante* at 1002. In *Trussel,* the district court denied the defendant credit for acceptance of responsibility in part because he filed a motion to withdraw his guilty plea, contending that the government had entrapped him and that his lawyers had been ineffective in pursuing this line of defense. Yet, just two months earlier, at the change of plea hearing, the defendant had indicated under oath that he was "fully satisfied" with his lawyers' advice and there was nothing that he had asked of them that they had not done. *See* 961 F.2d at 688–89. In fact, the court had previously continued the change of plea hearing so that the defendant could discuss the entrapment defense with his counsel. *Id.*

Against this backdrop, the district judge believed that the motion to withdraw the plea amounted to "prevarication" and an attempt to "manipulate" and "whipsaw" the court. *Id.* at 689, 691. We agreed and found no error in the decision not to credit the defendant for acceptance of responsibility. We noted that "[the defendant's] behavior was akin to (though not exactly the same as) obstructing justice; normally, a defendant who obstructs or attempts to obstruct justice is not entitled to a reduction for accepting responsibility." *Id.* at 691, citing U.S.S.G. § 3E1.1 (comment.) (n.4). In *Purchess,* the defendant's attorney filed written objections to the pre-sentence report contesting certain facts involving his relevant conduct and pursued those objections at the sentencing hearing; meanwhile the defendant himself remained silent. In passing sentence, the district judge refused to credit the defendant for acceptance, in part because the defendant, through his counsel, had contested his relevant conduct. *See* 107 F.3d at 1264–65. On appeal, we characterized this defense strategy as an attempt "to manipulate the Guidelines." *Id.* at 1267. We thus agreed that the district court could refuse to grant the acceptance reduction based on that strategy, so long as the court first ascertained that the defendant himself understood and embraced his attorney's arguments. *Id.* at 1267–69. Finally, in *Robinson,* we found no plain error in the district court's refusal to reduce the defendant's sentence by an additional third level for timely acceptance of responsibility (*see* U.S.S.G. § 3E1.1(b)(2)) based on extensive pre-trial proceedings indicating that the defendant had planned to challenge the government's evidence against her. 20 F.3d at 274–75.[4] In all three of these cases, then, the motions and arguments that foreclosed the reduction for ac-

---

4. It is important to note, however, that the district court did grant the defendant the standard two-level reduction for acceptance of responsibility that McIntosh seeks here. *See* 20 F.3d at 273–74. *Robinson's* discussion of the defendant's pre-trial motions is therefore limited to cases involving sentencing re-

ductions by a third level for defendants who give the prosecution timely notice of their intent to plead guilty and thereby spare the government the need to prepare for trial. That extra reduction is not at issue in this case.

ceptance of responsibility in one way or another signaled the defendant's wish to contest her criminal culpability.

The record in this case lends no support to the proposition that McIntosh attempted to "manipulate" the court or the judicial system in the manner that our opinions on this subject have recognized. Neither of McIntosh's two motions purported to deny his guilt; in fact, neither one of them addressed his conduct at all. True, both motions sought dismissal of the case, and in that sense they can be viewed as an effort to "beat the rap." But both motions were based on rights that the law guarantees to the guilty as well as the innocent. The first was made by an attorney who was new to the case and had an eye for a Speedy Trial Act problem that others had missed and which the district court itself ultimately acknowledged. R.19 at 10. McIntosh himself authored the second motion, but withdrew it on his own initiative after his attorney led him to appreciate its lack of merit. If these two motions suffice as a basis to withhold credit for acceptance of responsibility, then I can no longer discern a meaningful limit on a court's ability to penalize a defendant for asserting his constitutional, statutory, or procedural rights.

I speak without the authority of a majority today when I urge my colleagues on the district court to tread with the utmost care in this area. As we recognized in *Purchess*, the defendant is entitled to make legal arguments without putting at risk the credit that the Sentencing Guidelines would normally grant him for a candid admission of guilt. "Otherwise, the constitutional rights to effective assistance of counsel and due process are illusory." 107 F.3d at 1267. A court acts well within the boundaries of its discretion when it concludes, based on pleadings that in some concrete way contradict the admission of guilt, that the defendant has not genuinely accepted responsibility for his criminal actions. As I have explained at length, however, the two motions that McIntosh and his counsel filed simply do not fall into that category.

Because the record lends no support to the proposition that McIntosh was attempting to shirk blame for his conduct, I believe the appropriate course is for us to vacate the sentence and to remand for resentencing. As that is not the conclusion my colleagues have reached, I respectfully dissent.